The People of the State of Illinois, Defendant in Error,
v. J. Levirt Kelly, Plaintiff in Error.

Gen. No. 38,493.

58

Opinion filed April 20, 1936.

JOSEPH E. CLAYTON, JR., and HOWARD DAVID GETER, both of Chicago, for plaintiff in error; JOSEPH E. CLAYTON, JR., of counsel.

THOMAS J. COURTNEY, State's Attorney, for defendant in error; EDWARD E. WILSON, JOHN T. GALLAGHER and RICHARD H. DEVINE, Assistant State's Attorneys, of counsel.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

By this writ of error defendant, J. Levirt Kelly, seeks to reverse a judgment for $300 entered on the verdict of a jury finding him guilty of violating the statute to regulate the business of giving bail in criminal and quasi-criminal cases, and providing for the licensing of persons, firms or corporations engaged in that business, and providing certain penalties. Laws of 1931, page 437; ch. 38, p. 1244, Ill. State Bar Stats. 1935.

The record discloses that on January 23, 1934, an information was filed by leave of court charging that defendant, on November 21, 1933, "Did then and there unlawfully and intentionally accept a fee of seventy-five dollars for obtaining a bondman, to-wit, Henry Henderson to execute as surety a recognizance for one Frank W. Henry in a criminal case then pending in the Municipal court of Chicago. In violation of Sec. 627 F. ch. 38, Smith-Hurd Revised Statutes, 1933." Afterward, on November 27, 1934, there was a jury trial; defendant was found guilty and a fine of $300 imposed.

The evidence is to the effect that on November 21, 1933, Frank W. Henry was charged in a proceeding pending in the municipal court of Chicago with a criminal offense. He had been locked up in jail on the charge and desired to make bond so that he could be liberated. Thereupon W. T. Brown, who was interested in securing Henry's release, communicated with defendant, J. Levirt Kelly, for the purpose of securing bail; after some negotiations between the parties defendant induced Henry Henderson to sign Frank W. Henry's bond as surety; for obtaining the bond defendant was paid $75 and Henry was released.

The State's attorney contends that since the "bill of exceptions contains no motion for a new trial, the reviewing court will not consider the question of the sufficiency of the evidence," citing *People v. Majczek,* 360 Ill. 261. That case arose before the enactment of the Civil Practice Act and before paragraph 839 (1) of chapter 38, Ill. State Bar Stats. 1935, was enacted. By section 74 of the Civil Practice Act, "All distinctions between the common law record, the bill of exceptions and the certificate of evidence, for the purpose of determining what is properly before the reviewing court, are hereby abolished." And paragraph 839 (1) of chapter 38 provides: "Except as otherwise provided in this Act, proceedings for the review of crim-

inal cases and for the examination of sureties on any bond, shall be the same as in civil cases." Some of the provisions of the Civil Practice Act are applicable to criminal proceedings. McCaskill's Illinois Civil Practice Act Annotated, p. 250. In the instant case the motion for a new trial appears in the judgment order and this is sufficient.

Defendant contends that the judgment should be reversed because the statute violates the State and Federal Constitutions. Such contentions are waived by appealing directly to this court. *Hill v. Jeffery Co.,* 292 Ill. 490; *City of Edwardsville v. Central Union Telephone Co.,* 309 Ill. 482.

Defendant further contends that the court erred in denying his petition for a change of venue, which petition charged the judge with prejudice. In *Chicago, B. & Q. R. Co. v. Perkins,* 125 Ill. 127, where it was contended the trial court erred in denying a change of venue, the Supreme Court said (p. 129): "It is quite apparent that the object of the statute allowing a change of venue on account of the prejudice of the judge, was to secure a trial before a judge who was unprejudiced. . . . The statute must receive a reasonable construction; one that will promote the ends of justice; one which will carry out the end intended,— that is, a party should not be compelled to submit to a trial before a prejudiced tribunal." The rule there stated has been consistently followed. *Gregory Printing Co. v. DeVoney,* 257 Ill. 399; *People v. Gerold,* 265 Ill. 448.

In the *DeVoney* case it was also said that where one change of venue has been granted the court might properly deny any further petitions for a change of venue. On this question the court said (p. 401): "We held in that case [*American Car Co. v. Hill,* 226 Ill. 227] that one change of venue having already been granted, the court properly refused another."

In the *Gerold* case (265 Ill. 448) the court said (p. 451): "Under the statute as to change of venue in civil cases, which is practically identical with the statute here invoked, this court has several times held that the party applying for a change of venue for prejudice of the judge obtained all the relief to which he was entitled when another judge—one who had no interest in the proceeding—was called in to try the case. . . . Counsel concede that this is the rule laid down in civil cases, but insist that the statute should be differently construed as to criminal cases. We see no reason why any such distinction should be made in construing the same words in the criminal and civil statutes. The purpose in both cases is to secure a trial before a judge who is unprejudiced. . . . Change of venue statutes should receive a reasonable construction—one that will promote the ends of justice and carry out the purpose of the statute. *Chicago, Burlington & Quincy Railroad Co. v. Perkins,* 125 Ill. 127." In the instant case, the change of venue was sought on the ground of the prejudice of the judge of the municipal court before whom the matter was pending, and of 14 other judges of that court. We do not pass on the question of whether the petition was bad because it named more than two judges, as was held in *People v. Dunn,* 226 Ill. App. 437. (See also sec. 26, ch. 146, Illinois State Bar Stats. 1935.)

Let us look into the record to see whether defendant was seeking to have a trial of the case before a judge who was not prejudiced against him, or whether he was seeking to avoid a trial of the case at all events.

The record discloses that on January 23, 1934, an order was entered by Judge O'Connell of the municipal court of Chicago, giving leave to file the information against defendant; by the order the cause was transferred to the chief justice for reassignment and it was set for trial on January 30, 1934. January 29th Chief

Justice Sonsteby entered an order setting the cause for trial on January 30th in room 1128 of the city hall. On January 30th the matter came on before Judge Hartigan, an order was entered postponing the trial to February 15th, on which date the matter came before Judge Helander, who entered an order setting the case for trial on March 8th, on which date another order was entered by Judge Helander as follows: "Transferred to Chief Justice for reassignment on account of plea—change of venue." On the same day the chief justice entered an order setting the case for trial on March 23rd in room 1114 of the city hall, and on March 23rd the chief justice entered another order setting the case for trial at 2:00 p. m. April 6th. April 6th an order was entered by Judge Gutknecht transferring the case to the chief justice for reassignment, and on April 9th the chief justice entered an order setting the case for trial on April 12th in Branch 39. On April 12th Judge Brooks entered an order denying defendant's motion to quash the information, and the order further provides: "Transferred to Judge G. E. Gorman instanter. Transfer to Chief Justice for reassignment." We next find in the record a *capias* dated July 1, 1934, commanding the bailiff to take the defendant "if to be found anywhere in the State of Illinois, and safely keep him so that the bailiff may have his body before the Municipal court instanter." July 2nd an order was entered by the chief justice setting the case for trial on July 6th in Branch 41, and on July 6th the matter came on before Judge Gorman. The defendant failed to appear and an order was entered forfeiting his bond, and it was further ordered that an execution issue commanding the defendant to show cause why the forfeiture should not be made absolute. July 16th an order was entered by Judge Kasper which recites that both parties appeared, when the matter was again postponed and set for trial on

the next day, July 17th. July 17th Judge Elliott entered the motion of defendant to vacate the bond forfeiture and the matter was set for July 24th; July 24th Judge Elliott entered an order, "Transferred to Chief Justice for Re-assignment to Judge Gorman," and it was further ordered the cause be set for trial on July 31st. On July 30th the Chief Justice entered an order setting the case for trial on July 31st in Branch 40. July 31st Judge Gorman entered an order sustaining defendant's motion to set aside the bond forfeiture and the cause was transferred to the Chief Justice for reassignment.

We next find in the record an order entered by the chief justice on September 15th, when the case was set for trial on September 18th in Branch 39. September 18th an order was entered by Judge O'Connell transferring the case to the chief justice for "re-assignment to Room 917, September 25." September 25th the Chief Justice entered an order setting the case for trial on October 10th in Branch 39. We next find an order entered by Judge Padden October 11th, which states that defendant failed to appear, his bond was declared forfeited and it was ordered that a *capias* issue returnable forthwith. On the same day we find in the record a *capias* in accordance with the order just mentioned, and the bailiff's return shows he executed the writ by arresting defendant on November 16, 1934, by bringing his body before the municipal court.

November 16th Judge Padden entered an order postponing the cause and setting it for trial on November 20th. November 20th Judge Padden entered another order upon motion of defendant, and the trial was postponed and set for hearing on November 27th. Under date of November 27th there appears in the record a notice and a petition for change of venue. The notice is dated November 20th and served on the State's attorney, and states that on November 27th defendant

will appear before Judge Padden and present his petition for a change of venue.

November 27th the petition for change of venue was filed. It was verified by defendant on November 20th before a notary public. In the petition defendant swears that he fears and believes he will not receive a fair and impartial trial before Judge Padden because the judge is prejudiced against him and that because of "said prejudice your petitioner fears that he cannot and will not receive a fair and impartial trial before the following Judges of the Municipal court:" Padden, Sonsteby, Hasten, Hayes, Kasper, McGarry, Schiller, Edleman, Green, Borrelli, Bonelli, Lyle, Smith, McCarthy and Holland, because he believes these judges are prejudiced against him. The petition then contains the following: "Your petitioner further states that this petition is made at the first opportunity since the knowledge of the prejudice of said Judge Frank M. Padden came to this affiant, at which time your petitioner has been able to appear before his Honor, Judge Frank M. Padden."

On the same day, November 27th, defendant filed an affidavit in support of his petition, in which he swears that he fears and believes he will not receive a fair and impartial trial before Judge Padden and the other judges named in his petition. On the same day defendant's attorney filed an affidavit in support of the petition in which he swears that he represents the defendant of record and that he believes that Judge Padden, before whom the case is pending, and the other judges named in the petition, are prejudiced against defendant and therefore defendant cannot have a fair and impartial trial.

November 27th an order was entered by Judge Padden which recites that all parties were present and defendant moved the court for a change of venue. The motion was overruled, the cause heard, the jury returned its verdict finding defendant guilty as charged,

and defendant entered his motion for a new trial, which was set for November 30th. November 30th judgment was entered on the verdict and the court imposed a fine of $300.

There are other orders and documents filed which we think it unnecessary to refer to here.

The record discloses that on November 27, 1934, when the defendant presented his petition to Judge Padden for a change of venue, the State's attorney objected. The court thereupon stated that according to the record, "There has already been a change of venue granted in this case."

Counsel for defendant contended that the change of venue was granted in another case pending against the defendant, but the court said, "This is the same old case. There's been a change of venue." The motion was then overruled and the case tried.

From the record and proceedings had in the case, which we have above noted, it is obvious that defendant was trifling with the judges of the municipal court and with the enforcement of the law. Such tactics as were pursued in this case are nothing short of scandalous, and defendant's petition for a change of venue was mere subterfuge in an endeavor to avoid a trial. Defendant was not trying to secure an impartial judge before whom the case might be heard but, on the contrary, he was endeavoring to prevent a trial before any judge.

The record discloses that one change of venue had been allowed and this was all defendant was entitled to. *Gregory Printing Co. v. DeVoney,* 257 Ill. 399; sec. 26, ch. 146, Ill. State Bar Stats. 1935. Moreover, the petition for the change of venue was insufficient. *Hutson v. Wood,* 263 Ill. 376; *Levy v. Payne,* 204 Ill. App. 224 (Abst.). In the petition defendant swears that "this petition is made at the first opportunity since the knowledge of the prejudice of" Judge Padden came to him.

In the *Hutson* case the court said the right to a change of venue is absolute where a party brings himself within the provisions of the statute, but that it was not an abuse of discretion to refuse a change of venue on the ground of the judge's prejudice when notice of the application was not given until 4:20 o'clock in the afternoon of the day preceding the day at which the case was set for hearing. The court there said (p. 381): "The right to a change of venue is absolute where a party brings himself within the provisions of the statute, but the statute requires reasonable notice, and what is reasonable notice is left to the discretion of the judge to whom application is made in the particular case, and this discretion will not be interfered with unless abused. (*Glos v. Garrett,* 219 Ill. 208.) The affidavit of the complainant stated that a knowledge of the judge's prejudice did not come to her until the day the notice was given but did not state the time in the day when she acquired such knowledge. The notice was not served until late in the afternoon and the case was set for hearing the next day. Whether so short a notice was reasonable was a question to be determined by the court in view of all the circumstances, and we cannot say that he abused his discretion in this regard."

In the instant case the petition states that it was presented at the "first opportunity" since knowledge of the prejudice of the judge came to defendant's attention. When he obtained that knowledge does not appear. We think the petition was entirely insufficient in this respect.

Defendant contends that the information is insufficient in that it fails to charge an offense defined in the statute, and that his motion to quash should have been sustained. And further, that the evidence is also wholly insufficient to sustain the judgment that defendant had violated the statute. We think each of these contentions must be sustained.

In 1931 the legislature enacted a law entitled ''An Act regulating the business of giving bail in criminal and quasi-criminal cases and providing for the licensing of persons, firms, or corporations who engage in that business, and providing certain penalties.''

Section 1 of the Act provides: ''Any person, firm or corporation in any court having criminal jurisdiction or in any criminal or quasi-criminal action or proceeding who shall for another . . . execute as surety any bond or recognizance who within a period of one month prior thereto shall have made such a deposit or given such bail in more than two cases not arising out of the same transaction and shall have charged a fee or other compensation therefor, shall be deemed to be engaged in the business of giving bail.'' Section 2 provides that the court, judge or justice of the peace authorized to accept bail may examine the proposed bondsman or depositor of security for bail, and may refuse to accept such bond if satisfied that any portion of the security has been feloniously obtained by defendant or if the provisions of the section have in any case been violated by the proposed bondsman, and also if such bondsman within a period of one month prior thereto has acted in more than two other cases not arising out of the same transaction, and who has not been licensed by the Director of Trade and Commerce to execute bond under the statute.

Section 3 provides: ''No person, firm or corporation shall engage in the business of giving or soliciting bonds . . . in criminal or quasi-criminal cases without being duly licensed by the Director of Trade and Commerce.''

Section 4 provides that ''Every corporation engaged in such business shall procure a license for itself and every person and every firm so engaged in such business shall procure a license for himself or for such firm''; that the license shall be issued by the Director of Trade and Commerce upon the payment of a fee of

$25 and upon a certificate of good reputation of the applicant signed by a judge; that each license shall be valid from the time it is issued until the first of August of each year following the date of issuance. It further provides how the license may be renewed, revoked or suspended; and that "Every person, firm or corporation who continues in the business of giving, soliciting or executing bonds" shall annually renew the same by paying a fee of $10, and that anyone executing such bonds, being licensed, must deposit securities with the Director of Trade and Commerce of· the value of at least $5,000; that the compensation for acting as bail shall not exceed 10 per cent of the first hundred dollars and 5 per cent of each additional $500; that if any such person charge greater compensation for acting as bail, or who shall engage in the business without obtaining a license, "or who shall accept any fee or compensation for obtaining a bondsman . . . shall be guilty of a misdemeanor and be subject to a fine of not less than one hundred dollars and not more than five hundred dollars for each offense and in addition thereto shall, in any action brought to recover any such overcharge be liable in treble damages."

The State's attorney contends that the information is sufficient because it does not purport to charge that defendant was engaged in the bonding business and while so engaged accepted a fee for obtaining a bond, as defendant contends, but that defendant "was tried for a violation of the last of the four classifications [of sec. 4] which deals 'with persons, firms or corporations who shall accept any fee or compensation for obtaining a bondsman or obtaining a bond or recognizance, . . .' Persons engaged in such acts are commonly called 'bond runners' and such acts are labeled as soliciting business for bondsmen. Such persons cannot be licensed under this act." This conten-

tion cannot be sustained. The act is entitled an Act "regulating the business of giving bail . . ." and licensing persons ". . . who engage in that business," and the Act provides for the licensing of any person, firm or corporation engaged in the business; and section 3 provides that one soliciting bonds in criminal or quasi-criminal cases shall take out a license. We think the legislature intended to regulate the business of giving bail by requiring a license and the depositing of securities with the Director of Trade and Commerce by the licensee, and that the Act was not leveled at the punishment of one who obtained a bondsman for another charged with a criminal or quasi-criminal offense.

In *People v. Adams,* 351 Ill. 79, the court, in construing section 1 of the Act in question, held that an information which charged that defendant in two cases had acted as surety within a period of one month before executing a bond for Helen Smith, without having obtained a license as the statute required, did not charge a violation of the statute. The court there said (p. 81): "Only in case of his giving bail in three cases or more within a month before the act which is the subject of the criminal charge does the statute declare that he shall be deemed to be engaged in the business of giving bail. 'More than two' has no meaning different from 'three or more.' The act charged on August 3, 1931, in the case of Helen Smith was only the defendant's third act of becoming surety, and not until after that act was he by the terms of the statute deemed to be engaged in the business of giving bail." In that case the defendant was charged with acting as surety in two cases, and it was held that the information did not charge an offense because the statute did not apply unless such person acted in more than two cases within a month before the act which was the subject of the criminal charge. And that before there was a

violation of the statute, the bondsman must act in "three or more" cases. If, as held in that case, one might sign a bond as surety in three cases within a month and charge a fee therefor and the statute did not apply, it would seem a little unreasonable to hold that the legislature intended that a person who secured a surety to execute but one of these bonds would be liable under the statute. We think a fair consideration of the Act does not lead to such a conclusion.

Holding as we do that no violation of the statute was charged in the information, the judgment of the municipal court must be reversed.

*Judgment reversed.*

McSURELY, P. J., concurs.

MATCHETT, J., specially concurring: I agree the judgment should be reversed but I do not agree with the statements of the opinion concerning defendant's contention that the court erred in denying his motion for a change of venue. The State's attorney does not argue that the petition was defective in substance, or that it was presented on insufficient notice, or that a prior change of venue had been granted. In my opinion, the record would not justify the State's attorney in making any one of these contentions, and he does not so contend. The State's attorney argues that the abstract is insufficient to show the substance of the petition, citing *People v. Kraushaar,* 357 Ill. 463, and that the petition and supporting affidavits are not part of the record, citing *People v. Schueneman,* 320 Ill. 127. I think the abstract is sufficient, and that under section 74 of the Civil Practice Act, which is applicable, the petition and affidavits are a part of the record.