THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* NATHANIEL SPURLARK, Defendant-Appellant.

First District (4th Division)   No. 77-162

Opinion filed December 7, 1978.

Sam Adam and Alan D. Blumenthal, both of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Iris E. Sholder, and Marva W. Cohen, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE LINN delivered the opinion of the court:

At the conclusion of a jury trial in the circuit court of Cook County, defendant, Nathaniel Spurlark, was found guilty of possessing more than 30 grams of cocaine, a controlled substance (Ill. Rev. Stat. 1977, ch. 56½, par. 1402(a)(2)). He was sentenced to a term of 15 to 30 years imprisonment.

On appeal, defendant contends: (1) he was denied the constitutional right to be defended by counsel of his choice; (2) the trial court's failure to conduct a full evidentiary hearing on his motion for substitution of judge constituted reversible error; (3) the trial court abused its discretion when it denied defense counsel's request for a continuance; and (4) the sentence imposed must be vacated and the cause remanded for resentencing because the presentence investigation report (Ill. Rev. Stat. 1977, ch. 38, par. 1005—3—1) was not made available to defendant's counsel at least three days prior to the imposition of sentence.

We affirm the trial court.

The pertinent facts disclose that in May 1973 defendant was indicted for possession of cocaine, a controlled substance (Ill. Rev. Stat. 1977, ch. 56½, par. 1402(a)(2)). On June 6, 1973, attorney R. Eugene Pincham

entered his appearance on defendant's behalf. On June 8, defendant was arraigned and pled not guilty to the possession charge.

Between June 8, 1973, and January 23, 1975, the start of defendant's trial was continued 36 times. Of the 36 continuances, 21 were requested by defendant. Prior to trial, defendant also filed two motions for substitution of judges, both of which were granted.

On January 23, 1975, defendant's case was assigned to Judge Saul Epton. Judge Epton scheduled the start of defendant's trial for February 26. In selecting this February trial date, Judge Epton alluded to attorney Pincham's pressing case load:

"The Court: Now we have * * * February—February 26. Is that an agreeable date?

Mr. Pincham: It is your Honor.

The Court: On all your matters, Mr. Pincham?

Mr. Pincham: Yes."

On February 26, the defense and the prosecution agreed to a continuance and the trial judge reset the start of defendant's trial for April 7, 1975. On March 29, Pincham appeared in court and requested that the April 7 trial date be continued still further. To ensure Pincham's availability for trial, Judge Epton granted a continuance to July 21.

Attorney Charles Evans appeared in court on July 21, and informed Judge Epton that Pincham was in Boulder, Colorado, and would not return for a couple of weeks. Defendant's trial was reset for September 22.

On September 22, Pincham was granted still another continuance and defendant's trial was rescheduled for December 1. On December 1, Pincham informed the trial judge that he could not try the case because personal matters required his immediate attention. Defendant's trial was reset for January 8, 1976.

Between January 8 and October 8, 1976, the start of defendant's trial was rescheduled six more times, based on the representation that Pincham and his associates were engaged in other litigation. On October 8, attorney T. Lee Boyd, an associate of Pincham's, appeared in court and requested that the start of defendant's trial be continued again. Judge Epton informed Boyd that defendant's trial date had already been continued innumerable times in order to accommodate Pincham and his associates. The trial judge also pointed out that, as a result of these continuances, defendant's case was over three years old and was the only 1973 case still pending on the court's trial call. Judge Epton concluded his remarks by declaring that defendant was going on trial that day as previously scheduled. Boyd then informed the trial judge that he was unfamiliar with defendant's case and that Pincham and Isaiah Gant, another Pincham associate, were committed to other trials at that time.

After further dialogue, the trial judge continued the start of defendant's trial for five days, to October 13. The trial judge admonished Boyd that defendant's trial was to begin on October 13, and that Pincham or Gant were to be prepared for trial on that day.

On October 13, Gant appeared before the trial judge and requested another continuance. When asked if either he or Pincham was ready for trial, Gant answered, "No." After further discussion, the trial judge reset the start of defendant's trial for the following day, October 14.

At 9:30 a.m. on October 14, defendant appeared in court alone. Because counsel did not appear on defendant's behalf, Judge Epton proceeded to trial on another case. When Gant appeared in the courtroom at 3:30 p.m., the trial judge informed him that the case then being tried would conclude Friday, October 15. The trial judge then stated to Gant: "You are on trial Monday morning."

On Monday, October 18, attorney Samuel Bass informed Judge Epton that neither Pincham nor Gant was available that morning to conduct defendant's trial. Judge Epton reset the start of defendant's trial for October 27. Gant appeared in court on October 27 and requested that the trial date be continued yet again to November 3. The motion was granted.

Defendant's case was held on the trial call November 3 and 4. On November 5, Pincham appeared before the trial judge and demanded a jury trial. However, Pincham also stated that because he was engaged in other litigation he did not have time to either pick a jury or to proceed to trial that day. Judge Epton responded:

"[T]his matter has been held on our call for several days * * *; we have reached a point where the record indicates a substantial number of continuances and all sides—that is I should say both sides—were advised that this matter would go to trial."

After explaining that he was already involved in a criminal trial before Judge Strayhorn, Pincham stated:

"That case should conclude by Tuesday. Today is Friday. * * * I would, therefore, request of the Court to hold [Spurlark's] case on call until such time as I finish the case before Judge Strayhorn."

The trial judge agreed, stating:

"THE COURT: Let the record show that based upon Mr. Pincham's representation that he has not finished his case before Judge Strayhorn and that this will be a jury trial, this case will start just as soon as he concludes his case before Judge Strayhorn. If it is Monday, it will start Tuesday. If his case is finished before Judge Strayhorn on Tuesday, this case will start on Wednesday.

I intend to call Judge Strayhorn and ask him to advise me when

the case that you are trying now is completed, and I am sure that he will and you will also, Mr. Pincham.

MR. PINCHAM: I will report to you.

THE COURT: Then there is no problem."

During the November 5 proceedings, Pincham remarked that defendant's case had achieved some notoriety in the local press as a result of its numerous continuances. Pincham also stated he was unaware what had prompted the media attention.

Defendant's case was held on Judge Epton's trial call November 8, 9, 10, 11 and 12. On Friday, November 12, Pincham concluded his trial before Judge Strayhorn. On the following Monday, November 15, Gant appeared before Judge Epton and informed him that Pincham was still not available to try defendant's case because Pincham was now on trial in Federal Court before Judge Leighton. Gant requested that the start of defendant's trial be continued to some future date. The trial judge responded:

"Mr. Pincham will appear here. Mr. Pincham advised me that the moment he got through with the trial before Judge Strayhorn he would call and he would be here to proceed on this trial.

Mr. Pincham did not call me. He called the State's Attorney and he said he would be before Judge Leighton. We will now send for the jury and we will hold Mr. Spurlark here and you advise Mr. Pincham that he is on trial in this court * * *. Pincham promised me personally that he would be here and try this case the moment he got through before Judge Strayhorn. I have been sitting here waiting for Mr. Pincham * * *. I will send for the jury. We will wait."

Pincham did not appear. The trial judge informed Gant that he was to pick the jury and to handle the defendant's defense. The record discloses that as early as 1974 Gant had in fact answered ready to proceed with defendant's defense and had demanded trial. Gant now asserted, however, that he was unfamiliar with the case and could not proceed. He stated further that he was not defendant's attorney of record and that the defendant "persists in the fact he is represented [only] by Mr. Pincham."

The trial judge directed Gant to proceed with the trial. Following further dialogue, the trial judge again ordered Gant to proceed with the trial. At this point, Gant walked out of the courtroom.[1] The trial judge reset the start of defendant's trial for Tuesday, November 16.

On November 16, Gant appeared before the trial judge and presented a motion to allow Pincham to withdraw as defendant's attorney of record. At the same time, attorney Arnette Hubbard requested leave to enter the appearance of Sam Adam as defendant's new attorney.

---

[1] Gant was subsequently held in contempt of court and fined $1,000.

The trial judge informed Gant that Pincham's request to withdraw as defendant's attorney of record would not be granted until defendant appeared in court represented by other counsel ready to proceed to trial.

The trial judge denied Ms. Hubbard's request for leave to enter the appearance of Sam Adam as defendant's new attorney. Adam, at that time, was engaged with Pincham in litigation before Judge Leighton, and was not available to proceed with defendant's trial before Judge Epton. Furthermore, Adam's request for leave to enter his appearance on defendant's behalf was conditioned on the trial judge continuing the start of defendant's trial for an additional 30 days. The trial judge found this condition unacceptable.

After stating his position on the above two motions, the trial judge reset the start of defendant's trial for Wednesday, November 17. The defendant appeared in court on November 17 and informed the trial judge that he was waiting for someone from Pincham's office to appear on his behalf. Gant and Boyd did appear, later that same morning, but neither attorney was ready to proceed to trial.

It was at this point the trial judge addressed the defendant:

"You can represent yourself in this case, or you can have a lawyer of your own choosing, or I am going to appoint Mr. Cornelius Toole[2] to represent you."

Defendant responded that he did *not* want to represent himself. As for defendant's second choice, Gant interjected:

"I have discussed this with Mr. Spurlark over the last couple of days, Judge. He has indicated to your Honor here in Court that he prefers Mr. Pincham and in lieu of Mr. Pincham, Mr. Adam."

The trial judge rejected defendant's two selections observing that Pincham had already asked to withdraw and that both Pincham and Adam were not available to conduct defendant's trial. The trial judge then appointed attorney Cornelius Toole to represent the defendant and granted Pincham's November 16 motion to withdraw as defendant's attorney of record.

In the course of an ensuing conversation between the trial judge and the various attorneys who were present, Attorney Boyd remarked:

"Mr. Cornelius Toole is imminently [sic] qualified to try this case, there is no question about that, there is no question about the fact that he is a very well known attorney, and very, very experienced trial lawyer * * *."

---

[2] The trial judge had requested the Chicago Bar Association to designate an attorney for possible appointment by the court to represent the defendant. The Association chose Attorney Cornelius Toole, past chairman and an active member of the Committee for the Defense of Prisoners. Toole was present before the trial judge during the course of the proceedings on November 17.

During the course of this same dialogue, Gant stated that if he were granted a three-day continuance to prepare for trial, he would enter his appearance on defendant's behalf. The trial judge denied Gant's request, characterizing it as a dilatory tactic.

Following his appointment as Spurlark's attorney, Toole reviewed the relevant police reports and conferred with the defendant. Toole then stated he would be prepared to proceed to trial in two days, on Friday, November 19. Accordingly, the trial judge rescheduled the start of defendant's trial for that date.

On November 19, Toole informed the trial judge that he had talked extensively, the previous two days, with the defendant, as well as with Pincham and Pincham's associates. However, Toole stated that he had not yet been able to obtain Pincham's complete file. Toole also remarked that the State had cooperated fully with him and had provided him, earlier that morning, with a copy of their complete file. After expressing his belief the case was not complicated, Toole informed the trial judge that he could proceed to trial that day "without too much difficulty."

Toole, however, requested that the start of defendant's trial be continued over the weekend, "desirably until Monday," to afford him a further opportunity to review the State's file and to obtain and review the remainder of Pincham's file. The trial judge agreed, stating that while the jury would be selected that day, no opening statements would be made or evidence taken until Monday.

Toole then informed the trial judge that he had one serious reservation in proceeding to trial on Monday. Toole explained that in discussing the case with Pincham, he (Toole) had been led to believe two pretrial motions, previously filed on defendant's behalf, remained pending. The two motions entailed: (1) a request that certain evidence be suppressed;[3] and (2) a request that an informant's identity be disclosed.[4]

Toole requested a continuance "to complete [his] investigation and [his] conversation with Mr. Pincham" regarding these two motions. In denying the request, the trial judge remarked that there was more than adequate time over the weekend for Toole to ascertain the exact status of

[3] The record discloses that this motion to suppress had in fact been disposed of. In October 1972, Pincham moved to quash a search warrant and to suppress certain evidence in connection with this case. In denying the motion on February 26, 1973, the trial court found that the search warrant was in proper order, that the police officers were entitled to search the apartment at 8857 South State Street, and that there was probable cause to seize the property found.

[4] The record reveals that in October 1972, Pincham filed a disclosure motion for purposes of the suppression hearing and trial. It is not clear whether the request for disclosure in connection with the suppression hearing was ever ruled on. In any event, the request was nonmeritorious. (*People v. Downing* (1976), 37 Ill. App. 3d 297, 347 N.E.2d 848.) The disclosure request for purposes of trial was presented to the trial court, by Toole, at the close of the State's case and was denied. See *People v. Molsby* (1978), 66 Ill. App. 3d 647, ___ N.E.2d ___

these two motions and to determine what action, if any, he desired to take with respect to them. Thereupon, jury selection was started and completed.

On Monday, November 22, attorneys Pincham and Adam appeared before the trial judge in his chambers, outside the presence of the jury. Pincham was granted leave to file a 21-page motion for substitution of judge:

"MR. PINCHAM: If the Court please, I am presenting Your Honor the motion and affidavit of the defendant, Nathaniel Spurlark, for substitution of judges, supported by his affidavit, and asking for a hearing.

THE COURT: All right. Let the record show that I have just completed reading 21 pages of a petition signed by Nathaniel Spurlark. All right.

Mr. Pincham, do you want to amplify the petition in any way?

MR. PINCHAM: No, Judge.

THE COURT: Very well. Motion denied."

In denying the motion, the trial judge remarked that its presentation was a dilatory tactic, "pure and simple," and that the motion was not timely filed.

While in chambers, the defendant stated to the trial judge that he wanted to be defended by either Pincham or Adam instead of Toole:

"I want Mr. Adam or [Mr. Pincham] the lawyer that I hired."

The defendant's request was denied.

Before the presentation of opening statements to the jury, Toole submitted a motion for change of venue based on alleged pretrial publicity. The motion was denied. Toole also tendered numerous questions which he wanted propounded to each juror. While rejecting the majority of them, the trial judge did pose four of the tendered questions to the jurors. Two of the propounded questions inquired whether the jurors had been exposed to any pretrial publicity concerning the case and, if so, whether this exposure prevented them from rendering an impartial verdict.

Following the opening statements to the jury, the State produced five witnesses. Four of the five witnesses, Richard Joslin, John McAllister, Richard Peck and Fred Reilly, were Chicago police officers.

Officer Joslin testified that on August 11, 1972, he spoke with a police informant at 1121 South State Street. Following the conversation, Officer Joslin obtained a search warrant for: (1) the defendant, Nathaniel Spurlark; and (2) a second floor apartment located at 8857 South State Street.

The four police officers staked out the apartment building at 8857 South State. After observing the defendant enter the building, the four

officers proceeded to a second-floor apartment. Upon gaining entry to a bedroom, the officers saw defendant standing beside a table on which there was among other items, a mound of powder, small vials, scales, measuring spoons, and scissors.

Robert Boese, a chemist with the Criminalistics Division of the Chicago Police Department, testified that he performed various tests on the powder recovered from the apartment. The powder weighed 2,414.16 grams and contained no less than 10% cocaine. Boese testified that the cocaine had an estimated street value of $250,000.

The record discloses that Toole cross-examined each State witness in substantial detail concerning all aspects of their testimony. At the close of the State's case, Toole requested that the prosecution disclose the identity of the informer. The motion was denied.

At this point, the defendant told the trial judge, outside the presence of the jury, that he "would love" to take the stand but Toole "don't know anything about this case." Toole responded:

"My advise is for Mr. Spurlark to take the stand.

The Court: Yes.

Mr. Toole: I have advised him as to why I think he should take the stand. The decision he has made is a unilateral decision."

Defendant also told the trial judge that alleged witnesses were available but Toole "didn't have time to look into it."[5] Toole did not respond to defendant's allegation of available witnesses and a continuance was *not* requested by either Toole or the defendant.

The defense rested on Wednesday, November 24, without having called any witnesses to the stand. Following closing arguments, the jury deliberated and found the defendant guilty of possession of cocaine. The trial judge then ordered a written presentence investigation report (Ill. Rev. Stat. 1977, ch. 38, par. 1005—3—1) and continued the case to December 13.

The presentence report was filed with the court on December 13, and a copy was tendered to defendant and Toole at the scheduled hearing. After perusing the report, Toole stated:

"MR. TOOLE: Your Honor, I have a copy of the presentence report, which was given to me in open court today. I believe Mr. Spurlock has a period of three days to determine whether or not he wants to respond to the matters contained in the pre-sentence investigation, and Mr. Spurlock wants to pass this matter and determine whether he wants to have this case right now or wait for three days.

---

[5] The defendant did not present the trial court with any facts to indicate the identity of these alleged witnesses, the materiality of their testimony, or the reasonable likelihood that they could be found. See *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838, *cert. denied* (1977), 434 U.S. 894, 54 L. Ed. 2d 181, 98 S. Ct. 273.

THE COURT: I am sorry, denied. Aggravation, Mr. State's Attorney.

MR. TOOLE: That is a statutory right, Your Honor.

THE COURT: Aggravation."

Following the hearing on aggravation and mitigation, the trial judge sentenced the defendant to a term of 15 to 30 years imprisonment.

Between December 22, 1976, and January 27, 1977, Sam Adam attempted to obtain a hearing on a motion to vacate the defendant's conviction and sentence. Without delineating the various incidents which took place, it is sufficient to note the trial court ultimately determined it had lost jurisdiction over the case and was without power to vacate the judgment or sentence.[6]

The defendant takes this appeal.

OPINION

I

Initially, defendant contends he was denied the constitutional right to be defended by counsel of his choice. We disagree.

■■ A defendant's right to be assisted by counsel (U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, §8; Ill. Rev. Stat. 1977, ch. 38, par. 113—3) includes the right to be represented by counsel of his choice (*People v. Burson* (1957), 11 Ill. 2d 360, 143 N.E.2d 239; *People v. Cohen* (1949), 402 Ill. 574, 85 N.E.2d 19). While the right to counsel, itself, is absolute and unqualified, the right to *choice* of counsel is limited (*People v. Solomon* (1962), 24 Ill. 2d 586, 182 N.E.2d 736, *cert. denied* (1962), 371 U.S. 853, 9 L. Ed. 2d 87, 83 S. Ct. 94). As our Illinois Supreme Court stated in *People v. Mueller* (1954), 2 Ill. 2d 311, 316, 118 N.E.2d 1, 4:

"The right [to choice of counsel] is not so absolute, * * * that its exercise may not be denied where it will unduly * * * interfere with the administration of justice. To hold otherwise would enable a defendant in a criminal proceeding *** [to] harass and delay effective prosecution of *** crime. [Citation.]"

Although the right to be represented by a particular attorney is not absolute, it is fundamental. Consequently, the accused must be afforded a fair opportunity to be represented by his retained counsel. *People v. Payne* (1970), 46 Ill. 2d 585, 264 N.E.2d 167; *People v. Morris* (1975), 30 Ill. App. 3d 1075, 333 N.E.2d 29.

---

[6] "When a person accused of a crime has been convicted, sentenced and delivered into the custody of the proper officer of the penitentiary under a *mittimus*, the court rendering the judgment and imposing the sentence loses jurisdiction over the case * * *." (*People v. Wakeland* (1958), 15 Ill. 2d 265, 269, 154 N.E.2d 245, 248.) Section 5—8—1(d) of the Unified Code of Corrections (Ill. Rev. Stat. 1975, ch. 38, par. 1005—8—1(d)) has relaxed this rule by authorizing courts to *reduce or modify* the length of a sentence within 30 days of its imposition even though the sentence has been executed.

■ At what point a defendant's right to select counsel *unreasonably* interferes with the orderly process of judicial administration, necessarily depends upon the particular facts and circumstances surrounding each case and is a matter which lies within the sound judicial discretion of the trial court. The proper exercise of this discretion requires that the public need for efficient and effective administration of justice be weighed against the defendant's fundamental right to be represented by counsel of his choice.[7] As the Third Circuit Court of Appeals stated in *United States ex rel. Carey v. Rundle* (3d Cir. 1969), 409 F.2d 1210, 1214-15, *cert. denied* (1970), 397 U.S. 946, 25 L. Ed. 2d 127, 90 S. Ct. 964:

> "Desirable as it is that a defendant obtain private counsel of his own choice, that goal must be weighed and balanced against an equally desirable public need for the efficient and effective administration of criminal justice. The calendar control of modern criminal court dockets, especially in metropolitan communities, is a sophisticated operation constantly buffeted by conflicting forces. * * * That delays and postponements only increase the reluctance of witnesses to appear in court, especially in criminal matters, is a phenomenon which scarcely needs elucidation.
>
> Moreover, it is not only the prosecution which may suffer from unscheduled changes in the calendar. To permit a continuance to accommodate one defendant may in itself prejudice the rights of another defendant whose trial is delayed because of the continuance. * * *
>
> This is not to say that there should be an arbitrary and inelastic calendaring of cases without due regard, for example, to the existence of conflicting demands for the service of a particular counsel by different courts or by the schedules within a multi-judge court. In judicial administration, too, there should be no absolutes. It is the trial judge who must balance the conflicting demands of court administration with the rights of the accused, conscious,

---

[7] This test has been applied by numerous Illinois cases in a variety of factual contexts: (1) defendant is represented by the public defender but seeks a continuance at or near trial to substitute retained counsel; compare *People v. Green* (1969), 42 Ill. 2d 555, 248 N.E.2d 116, and *People v. Cohen* (1949), 402 Ill. 574, 85 N.E.2d 19, with *People v. Solomon* (1962), 24 Ill. 2d 586, 182 N.E.2d 736, and *People v. Koss* (1977), 52 Ill. App. 3d 605, 367 N.E.2d 1040;
(2) defendant retains counsel but at or near trial requests a continuance to substitute new counsel: *People v. McNeil* (1972), 53 Ill. 2d 187, 290 N.E.2d 602; *People v. Washington* (1968), 41 Ill. 2d 16, 241 N.E.2d 425;
(3) defendant retains counsel but when his case is called for trial, counsel is unavailable; defendant requests a continuance which is denied and the trial court appoints the public defender to represent the defendant; compare *People v. Bimbo* (1938), 369 Ill. 618, 17 N.E.2d 573, with *People v. Payne* (1970), 46 Ill. 2d 585, 264 N.E.2d 167, and *People v. Morris* (1975), 30 Ill. App. 3d 1075, 333 N.E.2d 29.
See generally Annot., 73 A.L.R.3d 725 (1976); L. Bonaguro, *Continuances—The Trial Judge's Authority and Responsibility*, 67 Ill. B.J. 106, 109-10, 117 (1978).

however, that when he considers the rights of those accused of crime, he must consider not only those involved in the case immediately before him but also those of other defendants awaiting trial whose rights may be affected by the consequences of trial delay.

What is demanded here is the exercise of judicial discretion in the exquisite sense. The trial judge must avoid the Scylla and Charybdis of extremes." See also *Giacalone v. Lucas* (6th Cir. 1971), 445 F.2d 1238, *cert. denied* (1972), 405 U.S. 922, 30 L. Ed. 2d 793, 92 S. Ct. 960.

■■ Accordingly, we must examine the particular facts presented by this case to determine if the trial court's refusal to hear defendant through his chosen counsel constituted an abuse of discretion.

Defendant contends the trial court erred by ordering his case to trial in November 1976, at a time when defendant's attorney, Eugene Pincham, was engaged in other litigation. This contention is frivolous.

The start of defendant's trial was continued repeatedly from 1973 to 1976 to accommodate Pincham's engagements in other litigation. From October 8 to November 5, 1976, the trial judge continually admonished Pincham and his associates that defendant's case was over three years old and it was essential, for the due administration of justice, that defendant's trial proceed without further delay.

On November 5, defendant's case was placed on the trial call and continued day to day with the express understanding that it would be tried as soon as Pincham concluded his trial before Judge Strayhorn. Notwithstanding this express agreement, on Monday, November 15, three days after concluding his trial before Judge Strayhorn, Pincham requested another continuance on the ground that he had since become immersed in litigation before Judge Leighton.

At this point, the trial judge properly concluded that defendant's case had to proceed to trial despite Pincham's unavailability. This was not an abuse of discretion. *People v. Kleist* (1924), 311 Ill. 179, 142 N.E. 486; *People v. Singer* (1919), 288 Ill. 113, 123 N.E. 327; see *Ungar v. Sarafite* (1964), 376 U.S. 575, 11 L. Ed. 2d 921, 84 S. Ct. 841.

Defendant argues that since Pincham was unavailable for trial, attorney Sam Adam should have been allowed to enter his appearance on defendant's behalf. We disagree.

At this stage of the proceedings, defendant's case was almost 3½ years old as a result of the numerous continuances already granted to him. The trial judge, therefore, was justifiably concerned that defendant's trial commence within a reasonably short period of time.

Attorney Adams' request for leave to file his appearance on

defendant's behalf was denied for two reasons: (1) Adam was not immediately available to try defendant's case as he was then engaged with Pincham in a trial before Judge Leighton; and (2) Adam would enter his appearance on defendant's behalf only if the start of defendant's trial was continued for an additional 30 days. Considering the surrounding circumstances, the trial court's denial of Adam's request was not an abuse of discretion. See, *People v. Hart* (1973), 10 Ill. App. 3d 857, 295 N.E.2d 63.

■ Finally, Gant, Pincham's associate, requested and was denied leave to enter his appearance on defendant's behalf. It is important to note the context of Gant's request. Over the span of 3½ years, Gant had appeared before the trial court numerous times on defendant's behalf. As early as 1974, Gant answered ready on defendant's case and demanded trial. Nevertheless, throughout 1975 and 1976, Gant repeatedly appeared and requested continuances claiming that neither he nor Pincham was prepared or available to try the case. During this entire time, Gant simply ignored the trial court's admonishments that he and Pincham prepare for trial.

On November 15, when Pincham failed to appear and try the case as previously agreed, the trial court ordered Gant to proceed to trial. Gant refused, claiming that after 3½ years he was still unfamiliar with the case, and further that *the defendant did not want his representation* but only Pincham's. When the trial court persisted in its demand, Gant walked out of the courtroom. The trial court held Gant in contempt and fined him $1,000.

On November 17, Gant appeared and informed the trial court that defendant persisted in his demand that he be defended *only* by Pincham and Adam. The trial court rejected defendant's two choices and appointed Cornelius Toole as defendant's attorney. It was at this point that Gant requested leave to enter his appearance on defendant's behalf, *provided* he was granted a three-day continuance. The trial court denied the request, characterizing it as a dilatory tactic. In light of the surrounding circumstances, the trial court's ruling was not an abuse of discretion.

In weighing the conflicting considerations of either accommodating defendant's choice of counsel or moving forward with the administration of justice and appointing other counsel for the defendant, the trial court was called upon to exercise its sound judicial discretion. We find that the discretion it exercised in no way impinged upon the constitutional rights of the defendant. *People v. Bimbo* (1938), 369 Ill. 618, 17 N.E.2d 573; *cf. People v. Payne* (1970), 46 Ill. 2d 585, 264 N.E.2d 167, and *People v. Morris* (1975), 30 Ill. App. 3d 1075, 333 N.E.2d 29.

## II

Defendant next contends that the trial court's failure to conduct a full evidentiary hearing on his motion for substitution of judge constituted reversible error. We disagree.

Prior to 1964, a motion for substitution of judge in a criminal case was governed by the early Illinois venue provisions (Ill. Rev. Stat. 1961, ch. 146, pars. 18 *et seq.*). Pursuant to chapter 146, a motion for substitution could be filed: (1) within 30 days after defendant's case was set on a judge's trial call (Ill. Rev. Stat. 1961, ch. 146, par. 24); or (2) any time thereafter, *provided* (a) the basis for the trial judge's alleged prejudice came to defendant's knowledge following "the expiration of such thirty days" (Ill. Rev. Stat. 1961, ch. 146, par. 25), and (b) the motion was presented "at the earliest practical moment" (*People v. Lawrence* (1963), 29 Ill. 2d 426, 194 N.E.2d 337, *cert. denied* (1964), 376 U.S. 946, 11 L. Ed. 2d 770, 84 S. Ct. 804). In extreme circumstances, the trial judge could inquire into the good faith of the movant and deny the motion for substitution if its sole purpose was to delay trial. *People v. Beamon* (1962), 24 Ill. 2d 562, 182 N.E.2d 656, *cert. denied* (1962), 371 U.S. 851, 9 L. Ed. 2d 86, 83 S. Ct. 90; *People v. Stewart* (1960), 20 Ill. 2d 387, 169 N.E.2d 796; *People v. Kelly* (1936), 285 Ill. App. 57, 1 N.E.2d 552; see *People v. Chambers* (1956), 9 Ill. 2d 83, 136 N.E.2d 812, *cert. denied* (1959), 359 U.S. 972, 3 L. Ed. 2d 839, 79 S. Ct. 888.

On January 1, 1964, a motion for substitution of judge in a criminal case became governed by section 114—5 of the Illinois Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1977, ch. 38, par. 114—5). Section 114—5 provides in pertinent part:

> "(a) Within 10 days after a cause involving only one defendant has been placed on the trial call of a judge the defendant may move the court in writing for a substitution of judge or any 2 judges on the ground that such judge or judges are so prejudiced against him that he cannot receive a fair trial. Upon the filing of such a motion the court shall proceed no further in the cause but shall transfer it to another court or judge not named in the motion.
>
> * * *
>
> (c) In addition to the provisions of subsections (a) and (b) of this Section any defendant may move at any time for substitution of judge for cause, supported by affidavit. Upon the filing of such motion the court shall conduct a hearing and determine the merits of the motion."

In an apparent carry-over from the earlier procedure followed under chapter 146, it has been held that a section 114—5(c) motion for substitution must be presented at the earliest practicable moment after defendant acquires knowledge of the trial judge's alleged prejudice.

*People v. King* (1973), 54 Ill. 2d 291, 296 N.E.2d 731; *People v. Ehrler* (1969), 114 Ill. App. 2d 171, 252 N.E.2d 227; see *People v. Ganci* (1978), 57 Ill. App. 3d 234, 372 N.E.2d 1077; *People v. Van Pelt* (1974), 18 Ill. App. 3d 1087, 311 N.E.2d 184.

In 1973, defendant filed two motions for substitution of judges under section 114—5(a). Both motions were granted automatically. On November 22, 1976, Pincham filed a third motion for substitution of judge, this time under section 114—5(c). The 21-page motion is a litany of events which transpired before the trial judge during earlier proceedings. These events cover a two-year time span, from January 23, 1975, when the case was first assigned to the trial judge, to November 19, 1976.

Pincham requested the substitution *after* Toole had been appointed as defendant's attorney on November 17, *after* the jury had been impaneled on November 19, and *minutes before* trial was to commence on November 22. After reading the petition and affording Pincham an opportunity to orally argue the matter, the trial judge denied the motion:

> "THE COURT: All right. Let the record show that I have just completed reading 21 pages of a petition signed by Nathaniel Spurlark. All right. Mr. Pincham, do you want to amplify the petition in any way?
>
> MR. PINCHAM: No, Judge.
>
> THE COURT: Very well. Motion denied."

The trial judge characterized the motion as a dilatory tactic "pure and simple," and held that it was not timely filed.

■■ We find that the motion for substitution was properly denied. First, considering the substance of the motion, we believe defendant was afforded a "hearing" within the meaning of section 114—5(c) when he was given the opportunity to orally argue the matter before the trial judge in chambers. *People v. Polk* (1973), 55 Ill. 2d 327, 303 N.E.2d 137; *People v. Winchell* (1977), 45 Ill. App. 3d 752, 359 N.E.2d 487.

■■ Second, as noted previously, a section 114—5(c) motion for substitution must be presented at the earliest practicable moment after defendant acquires knowledge of the trial judge's alleged prejudice. In this case, the motion for substitution fails to state when the alleged prejudice of the trial judge arose or when this alleged prejudice came to defendant's knowledge. Further, no explanation was presented, either in the motion or in arguments before the trial judge in chambers, as to why the request was not made before the very start of trial. (See *Haskins v. People* (1883), 14 Ill. App. 198, 200.) In light of these circumstances, the trial judge correctly concluded that the motion was not timely filed.

Finally, considering the extreme and unusual circumstances presented by this case, we believe the trial judge properly considered the good faith of the movant. The trial judge's finding that the sole purpose of

the motion was to delay trial is fully supported by the record. (See *People v. Beamon* (1962), 24 Ill. 2d 562, 182 N.E.2d 656, *cert. denied* (1962), 371 U.S. 851, 9 L. Ed. 2d 86, 83 S. Ct. 90; *People v. Stewart* (1960), 20 Ill. 2d 387, 169 N.E.2d 796.) It is apparent that the motion for substitution was a mere subterfuge in an endeavor to avoid trial. Defendant was not concerned with securing an impartial judge before whom the case might be heard but, on the contrary, was attempting to avoid trial before any judge.

### III

Defendant next contends the trial court abused its discretion when it denied defense counsel's request for a continuance. We disagree.

Whether a continuance should be granted to permit further preparation for trial necessarily depends upon the particular facts and circumstances surrounding the request, and is a matter which lies within the sound judicial discretion of the trial judge. (Ill. Rev. Stat. 1977, ch. 38, par. 114—4(e); *People v. Surgeon* (1958), 15 Ill. 2d 236, 154 N.E.2d 253.) The diligence of the moving party (Ill. Rev. Stat. 1977, ch. 38, par. 114—4(e)) is only *one* factor to be considered. As our supreme court stated in *People v. Lott* (1977), 66 Ill. 2d 290, 296-97, 362 N.E.2d 312, 314-15:

> "[T]he continuance provisions [Ill. Rev. Stat. 1977, ch. 38, par. 114—4] are to be construed 'to the end that criminal cases are tried with due diligence consonant with the rights of the defendant and the State to a speedy, fair and impartial trial' [Ill. Rev. Stat. 1977, ch. 38, par. 114—4(h)].
>
> \* \* \*
>
> There is no mechanical test, statutory or other[wise], for determining the point at which the denial of a continuance in order to accelerate the judicial proceedings violates the substantive right of the accused to properly defend. The circumstances of each case must be weighed, particularly the reasons presented to the trial judge at the time the request is denied."

■■ Toole was appointed as defendant's attorney on Wednesday, November 17. After reviewing the relevant police reports and discussing the case with defendant, Toole stated that he would be prepared to try the case on Friday, November 19. Accordingly, a two day continuance was granted. On November 19, Toole informed the trial judge that the case was not complicated and he could proceed to trial "without too much difficulty."

Toole did request, however, that defendant's trial be continued over the weekend, "desirably until Monday," to afford him a further opportunity to review the State's file and to obtain and review the

remainder of Pincham's file. The trial judge acquiesced, stating that while the jury would be selected that day, no opening statements would be made or evidence taken until the following Monday.

Toole then informed the trial judge that he had one serious reservation in proceeding to trial on Monday. In talking to Pincham, Toole had been led to believe two pretrial motions, a motion to quash and a motion to produce an informant's identity, which were previously filed on defendant's behalf, remained pending. Toole requested a continuance "to complete [his] investigation and [his] conversation with Mr. Pincham" regarding these two motions. The trial court denied the request, stating that there was more than adequate time over the weekend for Toole to ascertain the exact status of these two motions and to determine what action, if any, he desired to take with respect to them.

Defendant has been unable to show how this refusal to grant additional time prejudiced him in the preparation of his defense. (*People v. Canaday* (1971), 49 Ill. 2d 416, 275 N.E.2d 356; *People v. Davis* (1970), 45 Ill. 2d 514, 261 N.E.2d 314; *People v. Latimer* (1966), 35 Ill. 2d 178, 220 N.E.2d 314.) In light of the surrounding circumstances, we find that the trial judge did not abuse his discretion in denying the request for a continuance. *People v. Hayes* (1972), 52 Ill. 2d 170, 287 N.E.2d 465; *People v. Hobbs* (1975), 35 Ill. App. 3d 29, 340 N.E.2d 601.

## IV

Finally, defendant contends the sentence imposed must be vacated and the case remanded for resentencing because the presentence investigation report (Ill. Rev. Stat. 1977, ch. 38, par. 1005—3—1) was not made available to his counsel three days prior to the imposition of sentence (Ill. Rev. Stat. 1977, ch. 38, par. 1005—3—4(b)(2)).

Following the jury's verdict of guilty on November 24, the trial court ordered a presentence investigation report and continued the case to December 13. The presentence report was filed with the court on December 13 and a copy was tendered to defendant and his counsel at the scheduled hearing.

Toole requested a three-day continuance to review the report in detail and to respond to the matters contained therein before the court imposed sentence. The request was denied. Defendant's argument on appeal appears to be that he was prejudiced by this denial because he did not have adequate time to review the report for inaccurate information.

Defendant, however, has been unable to isolate a single piece of information in the presentence report which is in any way inaccurate, incomplete, or prejudicial. The record discloses defendant fully exercised his opportunity to present mitigating factors at the sentencing hearing.

Defendant has not indicated what further mitigating factors he could or would have presented had he had the presentence report three days prior to the imposition of sentence.

■█ While we do not condone the sentencing procedure followed in this case, we find that the late tender of the presentence report did not operate to defendant's prejudice and, therefore, does not require that his sentence be vacated. See *People v. McGee* (1977), 49 Ill. App. 3d 523, 364 N.E.2d 546; *cf. People v. Lambrechts* (1976), 41 Ill. App. 3d 729, 355 N.E.2d 53.

Accordingly, for the reasons stated, we affirm the conviction and sentence of the defendant.

Affirmed.

*JOHNSON, P. J., and ROMITI, J., concur.

---

* Justice Dieringer having retired, Justice Johnson read the briefs, listened to the tapes of the oral argument and participated in the rendering of this opinion.