Ronald MAYNARD, Petitioner, Appellee,

v.

Larry MEACHUM, Respondent, Appellant.

No. 76–1255.

United States Court of Appeals, First Circuit.

Argued Sept. 9, 1976.

Decided Nov. 19, 1976.

Gen., Chief, Crim. Bureau, Boston, Mass., were on brief, for appellant.

James R. Burke, Newton, Mass., for appellee.

Before COFFIN, Chief Judge, CLARK,* Associate Justice, U.S. Supreme Court (Ret.), and McENTEE, Circuit Judge.

COFFIN, Chief Judge.

Petitioner, Ronald Maynard, sought habeas corpus relief, attacking his state court conviction on the ground that his decision to waive counsel was not knowingly and intelligently made. The district court issued the writ, and the government appeals.

The record of the state court proceeding reveals that when the case was called for trial on February 18, 1971, Maynard's court-appointed counsel requested permission to withdraw from the case. In response to questioning by the judge, the attorney described the services he had performed during the eight months he represented Maynard. He said that Maynard first indicated interest in hiring another lawyer on February 1, but in a conversation with Maynard's mother on February 16 it developed that the money she was planning to use had "not come through" and that she was making no effort to retain other counsel at that time. The attorney asserted that he was prepared and able to conduct the trial, but that he hated "to engage in a trial where I know that the client does not desire my services." He concluded by stating that Maynard now wanted to represent himself, and wished to address the court in that regard. The court then ruled that the attorney would not be allowed to withdraw and should be prepared at all times to "resume active oral duties" if Maynard decided at any time to cease acting pro se. The judge then asked Maynard if he wanted to dispute anything the attorney had said. Maynard responded that he was asking for another lawyer "because he [his lawyer] told me himself he didn't think he could handle this." The attorney immediately denied making such a statement, and the colloquy continued:

John P. Corbett, Asst. Atty. Gen., Crim. Div., with whom Francis X. Bellotti, Atty. Gen., and John J. Irwin, Jr., Asst. Atty.

* Sitting by designation.

"THE COURT: All right. He has made a statement. Bear with us. Now, anything else?

DEFENDANT MAYNARD: No, but I just would like to know about what I told you. I told you I wanted another lawyer. . . . I mentioned one. It isn't a crime to ask for a lawyer. . . . I mentioned a lawyer that I would like to get from Lynn.

THE COURT: Well, in the absence of this lawyer, whoever he may be, that you would like, do you prefer to represent yourself?

DEFENDANT MAYNARD: I'd like to get this lawyer.

THE COURT: What efforts have been made to get this lawyer?

. . . DEFENDANT MAYNARD: I couldn't get him. I had to have a court appoint him.

THE COURT: Well, the court has already appointed one lawyer for you.

DEFENDANT MAYNARD: Well, I don't think, you know, that he can handle my case.

THE COURT: Have you ever met the other lawyer?

. . . DEFENDANT MAYNARD: No. I know of him. Inmates have told me he was a good lawyer.

THE COURT: Well, now, [counsel's] request for leave to withdraw is denied. And he will act, to the best of his ability, as counsel for Mr. Maynard to the extent that the circumstances permit. Mr. Maynard, to the extent that he wishes, may act as his own counsel, pro se, remaining in the dock at all times. But he may not, if he decides not to act pro se, he may not then later resume acting pro se."

After some discussion of the last proviso, and clarification by Maynard's counsel of statements he had made concerning his ability to conduct the case, the judge declared that the trial should begin. When Maynard presented some preliminary motions to the court, the judge asked if he was proceeding pro se, and he replied that he was. Following a brief recess, counsel for Maynard's co-defendant announced that he too wished to proceed pro se. This was allowed on the same conditions applied to Maynard.

The defense was conducted largely by Maynard's co-defendant, Robert Laurin. Laurin suggested questions to be asked of the jury panel, made opening and closing statements, entered some objections during the government's direct examination of its two witnesses, and cross-examined the witnesses. Counsel for the two defendants interposed a few objections, communicated defendants' motions and requests to the court, and consulted with the defendants before Laurin conducted his first cross-examination. In addition, each lawyer gave his client notes on the witnesses' direct testimony for use in cross-examination. At the close of the prosecution's case the defense rested without calling any witnesses, although they had subpoenaed several persons and were given an opportunity to consult with them and with counsel before making that decision. The jury found both defendants guilty as charged of two counts of armed robbery, two counts of assault with a dangerous weapon, breaking and entering, larceny, and malicious damage to property.

Maynard raised his claim of ineffective waiver of counsel on appeal to the Massachusetts Appeals Court, which held that because counsel was present and available during trial his "election to proceed as he did was not a waiver of his right to counsel" and so presented no question of knowing and intelligent waiver. *Commonwealth v. Maynard* (1974) Mass.App., 319 N.E.2d 453.[1] The Massachusetts Supreme Judicial Court denied an application for further re-

1. The Massachusetts court cited in support of its conclusion *Commonwealth v. Scott*, 360 Mass. 695, 277 N.E.2d 483 (1971), which held that a court need not appoint substitute counsel when a defendant advances no reasons for his dissatisfaction with present counsel. Thus while the court decided that Maynard had not waived counsel, it appears that it also considered whether he had a right to demand that a new lawyer be appointed. This is consistent with our approach.

view, and Maynard then sought habeas relief in the district court.

In an unpublished opinion, the district court held that Maynard had represented himself at trial, characterizing the lawyer as merely "stand-by-counsel", and that the trial court had an affirmative obligation "to ask such questions and receive such satisfactory answers as to enable the court to conclude that a decision to forego a fundamental, important constitutional right was indeed made knowingly and intelligently." Because the record was "barren of the showing that is necessary or would be necessary to conclude that the waiver was" constitutionally effective, the court concluded that Maynard was entitled to a new trial.

■ We agree with the district court that the arrangement at Maynard's trial raises the issue of effective waiver of counsel: whatever label is attached to it, the net result was that Maynard had less than the full representation by counsel to which, absent a valid waiver, he was entitled under the Sixth Amendment. *See United States ex rel. Konigsberg v. Vincent*, 388 F.Supp. 221, 224–25 (S.D.N.Y.), *aff'd*, 526 F.2d 131 (2d Cir. 1975). *Cf. Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). We can conceive of no reason why the standard for waiving part of a constitutional right should be different from the standard for waiver of the entire right. Respondent argues, and we agree, that it is within the discretion of a trial court to allow the sort of hybrid arrangement that was adopted in this case, *see, e. g., United States v. Hill*, 526 F.2d 1019 (10th Cir. 1975); *United States v. Guanti*, 421 F.2d 792 (2d Cir. 1970). But it does not follow that such an arrangement is the equivalent of full representation by counsel for purposes of waiver: it was apparently not suggested in any of the cases cited by respondent that the defendant's agreement to the arrangement was not knowing and intelligent. On respondent's analysis, the right to counsel is satisfied, regardless of the reality of self-representation, so long as counsel is not formally allowed to withdraw and remains in the courtroom. We do not believe that the protections of this right that have evolved from *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), can be so casually swept away.

■ Thus, although the record reveals that Maynard knew of his right to appointed counsel, and that he affirmatively acquiesced in the procedure at trial, *compare Carnley v. Cochran*, 369 U.S. 506, 513–17, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962), the question remains whether this acquiescence was competent, intelligent and voluntary. *See Johnson v. Zerbst, supra*, 304 U.S. at 465, 58 S.Ct. 1019; *Moore v. Michigan*, 355 U.S. 155, 164, 78 S.Ct. 191, 2 L.Ed.2d 167 (1957). We do not believe, however, that the absence of explicit bench warnings or a colloquy on the record compelled the district court's conclusion that Maynard's waiver of counsel was ineffective.

■ The fact of waiver, "ordinarily an intentional relinquishment or abandonment of a known right", *Johnson v. Zerbst, supra*, 304 U.S. at 464, 58 S.Ct. at 1023, may not be presumed or inferred from a silent record. *Carnley v. Cochran, supra*, 369 U.S. at 516, 82 S.Ct. 884. But where, as here, the record shows the petitioner's "affirmative acquiescence" in the arrangements at trial, the burden falls on him to show that his "acquiescence was not sufficiently understanding and intelligent to amount to an effective waiver." *Id.* at 516–17, 82 S.Ct. at 890. *See Spanbauer v. Burke*, 374 F.2d 67, 74 (7th Cir. 1966); *Bortmess v. Rodriquez*, 375 F.2d 113, 114 (10th Cir. 1967). Moreover, while the Supreme Court has observed that "it would be fitting and appropriate" for the trial court to determine the effectiveness of a waiver on the record, *Johnson v. Zerbst, supra*, 304 U.S. at 465, 58 S.Ct. at 1023, it also cautioned that "[w]hen collaterally attacked, the judgment of a court carries with it a presumption of regularity. Where a defendant, without counsel, acquiesces in a trial resulting in his conviction and later seeks release by the extraordinary remedy of *habeas corpus*, the burden of proof rests upon him to establish that he did not competently and intelligently waive

his constitutional right to assistance of counsel." 304 U.S. at 468–69, 58 S.Ct. at 1025. [Italics original, footnotes omitted.] *See also Moore v. Michigan, supra.*

 While record inquiry would facilitate the task of reviewing courts, whether a defendant has intelligently waived a constitutional right turns not simply on the state of the record, but on all of the circumstances of the case. *See Henderson v. Morgan,* 426 U.S. 637, 644, 96 S.Ct. 2253, 2257, 49 L.Ed.2d 108 (1976). *See also United States v. Rosenthal,* 470 F.2d 837, 844–45 (2d Cir. 1972); *Townes v. United States,* 371 F.2d 930, 934 (4th Cir. 1966). Accordingly, this case must be remanded to the district court for further proceedings to determine whether, considering the facts and circumstances of the particular case, including the background, experience and conduct of the accused, the waiver of counsel was effective. *See Johnson v. Zerbst, supra,* 304 U.S. at 464, 58 S.Ct. 1019. We think it is appropriate at this juncture to indicate what factors, in our view, might influence this determination.

 First, it cannot be disputed that an effective waiver must be the product of a free and meaningful choice. *See Moore v. Michigan, supra,* 355 U.S. at 164, 78 S.Ct. 191; *Von Moltke v. Gillies,* 322 U.S. 708, 729, 68 S.Ct. 316, 92 L.Ed. 309 (1948) (separate opinion of Frankfurter, J.). This does not mean that the decision must be entirely unconstrained. A criminal defendant may be asked, in the interest of orderly procedures, to choose between waiver and another course of action as long as the choice presented to him is not constitutionally offensive. *Cf. Illinois v. Allen,* 397 U.S. 337, 346, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970); *Brady v. United States,* 397 U.S. 742, 750–53, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). The record in this case indicates that, while Maynard did not affirmatively wish to represent himself, when given a clear choice between proceeding with counsel already appointed or going pro se, he elected the latter. *Compare Kates v. Nelson,* 435 F.2d 1085, 1088 (9th Cir. 1970) *with United States ex rel. Higgins v. Fay,* 364 F.2d 219,

222 (2d Cir. 1966). His decision was therefore "voluntary" unless that choice placed him in a dilemma of constitutional magnitude.

 The right to counsel of one's choice is not absolute. A court need not tolerate unwarranted delays, and may at some point require the defendant to go to trial even if he is not entirely satisfied with his attorney. *See United States v. Rodriguez Vallejo,* 496 F.2d 960, 964–65 (1st Cir. 1974). While a defendant may not be forced to proceed to trial with incompetent or unprepared counsel, *see Lofton v. Procunier,* 487 F.2d 434, 436 (9th Cir. 1973), a refusal without good cause to proceed with able appointed counsel is a "voluntary" waiver. *United States ex rel. Testamark v. Vincent,* 496 F.2d 641 (2d Cir. 1974); *Kates v. Nelson, supra,* 435 F.2d at 1088; *Glenn v. United States,* 303 F.2d 536, 540–41 (5th Cir. 1962). Thus, whether Maynard's decision was voluntary will turn on whether his objections to his appointed counsel were such that he had a right to a new appointed counsel. *Ingle v. Fitzharris,* 375 F.2d 398, 400 (1967) (Koelsch, J., concurring), *appeal after remand,* 411 F.2d 611 (9th Cir. 1969). Maynard's wish for another specific lawyer, or a mere disagreement over trial tactics, would not warrant the conclusion that an offer to appoint alternative counsel was constitutionally required. *United States v. Young,* 482 F.2d 993 (5th Cir. 1973); *United States v. Gutterman,* 147 F.2d 540 (2d Cir. 1945). On remand the district court should ascertain whether there was any substantial basis for Maynard's complaint, for example, failure to prepare a defense, conflict of interest, or such a complete breakdown in communication that his right to a fair trial was threatened. *See United States v. Calabro,* 467 F.2d 973, 986 (2d Cir. 1972). It would also be proper to consider the timeliness of Maynard's request for new counsel, and whether his professed concerns were borne out by developments at trial. *See United States v. Morrissey,* 461 F.2d 666, 670 (2d Cir. 1972).

 If it appears that it was proper to confront Maynard with this choice, the

final question is whether his decision was understandingly and intelligently made: that is, did he make this choice "with eyes open". *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279, 63 S.Ct. 236, 87 L.Ed. 268 (1942). This colloquial formulation of the standard suggests that there is no particular piece of information that is essential to an effective waiver of counsel. An intelligent waiver does not require that the accused have the skill or knowledge of a lawyer, *Faretta v. California*, 422 U.S. 806, 835, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). What is required, we think, is a sense of the magnitude of the undertaking and the "disadvantages of self-representation", *id.*: an awareness that there are technical rules governing the conduct of a trial, and that presenting a defense is not a simple matter of telling one's story. *See Hodge v. United States*, 414 F.2d 1040, 1043 (9th Cir. 1969). In addition, the accused should have a general appreciation of the seriousness of the charge and of the penalties he may be exposed to before deciding to take a chance on his own skill. *Cf. Von Moltke v. Gillies, supra*, 322 U.S. at 723–24, 68 S.Ct. 316 (plurality opinion of Black, J.). *See Spanbauer v. Burke, supra*, 374 F.2d at 71–74. We repeat, however, that the defendant's knowledge of these relevant facts need not appear on the record at trial, *id.* at 74. The district court may properly consider, in addition to Maynard's background, experience and conduct, *Johnson v. Zerbst, supra*, 304 U.S. at 464, 58 S.Ct. 1019, such factors as his involvement in previous criminal trials, his representation by counsel before trial, and the continued presence of advisory counsel at trial in determining whether he understood what he was getting into. *See United States v. Rosenthal, supra*, 470 F.2d at 845; *United States v. Odom*, 423 F.2d 875 (9th Cir. 1970). Indeed, it may be proper to presume that the defense counsel who represented Maynard for eight months had discussed all relevant aspects of the case with him. *See Henderson v. Morgan, supra*, 426 U.S. at 647, 96 S.Ct. at 2259. The ultimate question before the district court will be whether Maynard can show, by a preponderance of the evidence, that his

affirmative waiver of counsel was not made with knowledge and understanding of the factors we have discussed, *see Moore v. Michigan, supra*, 355 U.S. at 161, 78 S.Ct. 191. *See also Bortmess v. Rodriquez, supra; Spanbauer v. Burke, supra*.

*The judgment of the District Court is vacated and the case is remanded for further proceedings consistent with this opinion.*