James Edward WILKS,
Petitioner-Appellant,

v.

Thomas ISRAEL, Warden, Wisconsin
State Prison, Respondent-Appellee.

No. 79–2504.

United States Court of Appeals,
Seventh Circuit.

Argued April 2, 1980.
Decided July 22, 1980.

---

Melvin Greenberg, First Asst. Wisconsin State Public Defender, Madison, Wis., for petitioner-appellant.

William L. Gansner, U. S. Magistrate, W. D. Wisconsin, Madison, Wis., for respondent-appellee.

Before PELL and WOOD, Circuit Judges, and BAKER, District Judge.*

HARLINGTON WOOD, Jr., Circuit Judge.

Following his conviction for attempted murder in a Wisconsin state court, petitioner James Edward Wilks sought a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The federal district court refused to issue the writ and petitioner appealed. On appeal petitioner contends that he was denied his constitutional right to counsel, that the refusal of the state trial judge to recuse himself from the case deprived petitioner of

---

* District Judge Harold A. Baker of the Central District of Illinois is sitting by designation.

due process, and that the trial judge's refusal to accept his proffered guilty plea to a lesser included offense deprived him of substantive due process. We affirm the district court's decision.

### Right to Counsel

The facts of the crime are not in issue as petitioner limits his arguments to the allegedly unconstitutional conduct of his state trial.[1] Petitioner first argues that the trial court deprived him of his right to counsel in violation of the Sixth Amendment as applied against the states by the Fourteenth Amendment.

The state trial court appointed Francis Demet to represent petitioner. Prior to trial the petitioner informed the court, without specifying any reasons, that he wished to discharge Demet. The court informed petitioner Wilks that if he discharged Demet he would either have to retain his own attorney or represent himself. When the court asked the petitioner if he wanted to represent himself, petitioner responded: "If it comes down to it, yes." At this point Demet continued to represent the petitioner.

Later, three days before the trial began, the petitioner renewed his attempt to discharge Demet and have him replaced with another court-appointed attorney. The following colloquy occurred:

THE COURT: Do I understand that you have changed your mind and you want to represent yourself?

THE DEFENDANT: If necessary, yes.

THE COURT: It is not necessary. I want you to have counsel, because we will have a more orderly trial, but I certainly do not want to deprive you of your right to represent yourself, and you have a constitutional right to represent yourself, sir. Now, what is it? Do you want Demet to represent you or do you wish to represent yourself?

THE DEFENDANT: No, I don't want him to represent me.

THE COURT: In other words, you wish to represent yourself?

THE DEFENDANT: Ya.

THE COURT: All right. But I will have Mr. Demet at the trial, however, seated in the audience in the event—he will not interfere with your trial unless you want to turn to him for advice.

Just before recessing the pretrial conference, the court stated to the petitioner: "Think very seriously that you should have Mr. Demet at your side representing you at the trial. It is very important. All right. You better go back and talk to him, Mr. Demet. All right."

On the first day of the trial, petitioner Wilks had reconsidered his decision not to have Demet represent him. Demet conducted Wilks' defense through pretrial motions, opening argument, and the state's case-in-chief. Demet also began the presentation of the defense, conducting the direct examination of the petitioner. During a side bar conference while petitioner was on the witness stand but not in the presence of the jury, the petitioner jumped from his chair and assaulted the trial judge. When the trial was reconvened the next day, the petitioner informed the court that he no longer wanted to be represented by Demet. The petitioner indicated that while he did not want Demet he also did not think he was qualified to represent himself and wanted the state to appoint him a new attorney.

The court and the district attorney questioned the petitioner pointing out the seriousness of the consequence of being found guilty, the petitioner's inadequacies in conducting his own defense, and the advantages of having a trained attorney. The petitioner persisted, however, in his desire not to have Demet represent him. The court refused to appoint a new attorney and, on the basis of the petitioner's insistence, relented and permitted petitioner to proceed without Demet. Demet was in-

---

1. The jury convicted petitioner of attempted murder in violation of Wis.Stats. §§ 940.01 and 939.32. The facts elicited at trial indicated that the petitioner, following an argument, stabbed his girlfriend, Alberta Bolden.

structed to remain in court to assist the petitioner if the petitioner desired aid. The trial judge did not require Demet to conduct the defense against the petitioner's wishes.

Thereafter, petitioner refused to be cross-examined by the state and did not call any witnesses on his own behalf. The state presented its closing argument. Petitioner began to make his closing argument.[2] The court asked the petitioner if he would prefer to have Demet make the closing argument. The petitioner refused Demet's services. Again during the instruction conference the services of Demet were offered to the petitioner but he refused them. The jury found the petitioner guilty.[3]

Based on these occurrences, petitioner argues that he was denied his constitutional right to counsel. He contends that he did not waive his right to counsel but instead insisted upon representation by an attorney; that the choice offered him—either self-representation or Demet—placed him in an untenable position which deprived him of his free choice; and that the court should have ordered Demet to continue his representation of the petitioner.

■■■ A criminal defendant may waive his constitutional right to counsel. *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); *United States v. Gaines*, 529 F.2d 1038, 1043 (7th Cir. 1976). "A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege" (*Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)) and must be the product of a free and meaningful choice (*Moore v. Michigan*, 355 U.S. 155, 164, 78 S.Ct. 191, 196, 2 L.Ed.2d 167 (1957)). Courts will carefully scrutinize a waiver of the right to counsel indulging every reasonable presumption against the waiver. *Johnson v. Zerbst*, 304 U.S. at 464, 58 S.Ct. at 1023; *United States*

*v. Davis*, 604 F.2d 474, 482 (7th Cir. 1979); *Day v. United States*, 357 F.2d 907, 909 (7th Cir. 1966). This does not mean, however, that the decision to waive counsel must be entirely unconstrained. "A criminal defendant may be asked, in the interest of orderly procedures, to choose between waiver and another course of action as long as the choice presented to him is not constitutionally offensive." *United States v. Davis*, 604 F.2d at 483 (quoting *Maynard v. Meachum*, 545 F.2d 273, 278 (1st Cir. 1976)).

■■ In the present case the court presented petitioner Wilks with a clear choice between representation by Demet or self-representation with Demet available for consultation at the petitioner's discretion. The court clearly indicated it would not appoint new counsel for petitioner. Yet, the petitioner persisted in his desire to discharge Demet and have new court-appointed counsel.

We feel that petitioner's decision to proceed without Demet constituted a knowing and intelligent waiver of his right to counsel. The record reveals that the trial court impressed on Wilks that discharging Demet meant self-representation. The court and the assistant district attorney on more than one occasion encouraged petitioner to accept the services of Demet. The assistant district attorney questioned petitioner quite extensively, pointing out the places in the trial where an attorney's assistance would be particularly useful. The petitioner unequivocally expressed a desire for self-representation over the services of Demet. When the court agreed to permit the discharge of Demet, it ordered Demet to remain in the courtroom for consultation if petitioner wanted to consult with him. The court specifically suggested that petitioner consult Demet during closing arguments and during the instruction conference, but

---

**2.** Petitioner attempted to read his life history to the jury during closing argument. The trial court refused to permit this, ruling it immaterial.

**3.** Pursuant to Wisconsin practice the case then proceeded to the insanity phase of the bifurcat-

ed trial. At this point the court declined to permit the petitioner to represent himself, ordering Demet to conduct the defense during the second phase of the trial. The petitioner was found not to be suffering from a mental disease or defect.

petitioner refused this assistance. The record also reveals that petitioner Wilks was a high school graduate, was found to be mentally competent, and was familiar with the criminal justice system, having been convicted of three felonies in the past. Under these circumstances the conclusion is clear that Wilks knowingly chose to waive counsel.

We also find that petitioner's choice was voluntary. A clear choice between two alternative courses of action does not always permit a petitioner to make a voluntary decision. If a choice presented to a petitioner is constitutionally offensive, then the choice cannot be voluntary. A defendant may not be forced to proceed with incompetent counsel; a choice between proceeding with incompetent counsel or no counsel is in essence no choice at all. *Maynard v. Meachum*, 545 F.2d at 278; *Lofton v. Procunier*, 487 F.2d 434, 436 (9th Cir. 1973). The permissibility of the choice presented to the petitioner in this case depends on whether the alternative to self-representation offered operated to deprive him of a fair trial. If it could be shown that proceeding with Demet was constitutionally offensive, then the resulting waiver would not be voluntary. Here, however, petitioner offered no explanation for his displeasure with Demet. There is no indication that Demet was not a qualified attorney or that he was not conducting petitioner's defense in a capable manner.[4] Since petitioner did not offer any compelling reason why Demet should not be represent him, we find the choice presented to petitioner did not operate to deny him the right to counsel. *See United States v. Davis*, 604 F.2d 474; *Maynard v. Meachum*, 545 F.2d 273; *Kates v. Nelson*, 435 F.2d 1085 (9th Cir. 1970). *But see Wright v. State*, 32 Md.App. 60, 359 A.2d 1 (1976). That petitioner did not particularly like the choice presented to him and that he did not

want to proceed *pro se* are not sufficient reasons to render the choice constitutionally offensive. Petitioner voluntarily and knowingly waived his right to counsel.

### Recusal of the Trial Judge

Petitioner next argues that the refusal of the trial judge to recuse himself from the case deprived him of his constitutional right to a fair trial.

The record reveals that the petitioner acted uncooperatively during pretrial proceedings and repeatedly attempted to have the trial judge removed from the case. During a pretrial hearing the petitioner became upset with the judge and threw a stamping machine and a microphone at the judge. During the trial petitioner's behavior did not improve. At one point, while the petitioner was on the witness stand and while the jury was not in the courtroom, the petitioner jumped from the chair and assaulted the trial judge. Immediately after the assault, the judge stated, still outside the presence of the jury:

> I am going to say it for the record, he is going away for so long they are going to forget that they ever knew him, and I want any reviewing court to know what my intentions are.

The judge also referred to the petitioner as a coward. Later, after the judge's feelings had subsided, the judge stated:

> I had over 60 jury trials last year. Now, this is just another defendant as far as I'm concerned. Why he has made me the nub of this whole case, I do not understand.

Asserted prejudicial comments by a trial judge are not the proper subject for habeas relief unless they deprive petitioner of constitutional rights. *Kaufman v. United States*, 394 U.S. 217, 222–23, 89 S.Ct. 1068 (1969); *Buckelew v. United States*, 575 F.2d 515, 518 (5th Cir. 1978). The petitioner

---

4. The petitioner's conclusory statement that Demet was unqualified appears baseless. The petitioner indicated nothing to substantiate, even remotely, this statement. At one point, the petitioner stated that he did not want Demet because he preferred to have an attorney he knew. The trial judge knew Demet to be a competent and qualified attorney. Given these factors we do not feel that the trial judge failed in any duty to examine the reasons for petitioner's displeasure with Demet.

must show that the refusal to recuse was a "fundamental defect which inherently results in a complete miscarriage of justice . . . ." *Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962).

Here, as could be expected, the trial judge reacted adversely to the petitioner's unruly behavior. A petitioner's deliberate attack on the trial judge calculated to disrupt the proceedings will not force a judge out of a case. *Mayberry v. Pennsylvania*, 400 U.S. 455, 463, 91 S.Ct. 499, 504, 27 L.Ed.2d 532 (1971). To permit such an attack to cause a new trial before a new judge would encourage unruly courtroom behavior and attacks on the trial judge and would greatly disrupt judicial administration.[5]

Further, a review of the entire record reveals that the petitioner received a fair trial.[6] The petitioner's acts and the trial judge's reactions to them occurred when the jury was not in the courtroom. It was the jury, not the court, which decided that the petitioner was guilty of attempted murder. Our examination of the record reveals that the court's rulings were appropriate and in no way reflected any animosity toward the petitioner. The petitioner received a fair trial free from judicial prejudice.

*Refusal to Accept the Guilty Plea*

Petitioner's final contention is that the trial court's refusal to accept his guilty plea to a lesser included offense violated his constitutional rights protected by the Due Process Clause. The court refused to accept the proffered plea because petitioner would not admit he had committed the acts charged. The federal district court refused to consider this argument because petitioner failed to exhaust the issue before the state courts.

In the present case, an examination of the petitioner's brief to the Wisconsin Court of Appeals indicates that the petitioner argued that the trial court abused its discretion in refusing to accept the petitioner's plea. The petitioner relied on state cases which construed a Wisconsin statute[7] and federal cases which involved a federal trial court's discretion under Rule 11 of the Federal Rules of Criminal Procedure.[8] The petitioner never challenged the trial court's action as constitutionally impermissible.

A state prisoner petitioning for a writ of habeas corpus must exhaust his available state court remedies. *Picard v. Connor*, 404 U.S. 270, 92 S.Ct. 509, 30

---

**5.** Petitioner relies on *Taylor v. Hayes*, 418 U.S. 488, 94 S.Ct. 2697, 41 L.Ed.2d 897 (1974), and *Mayberry v. Pennsylvania*, 400 U.S. 455, 91 S.Ct. 499, 27 L.Ed.2d 532 (1971), for the proposition that a trial judge on account of a defendant's actions may become so personally embroiled in a controversy that due process requires he remove himself. *Taylor* and *Mayberry* both involved citations for contempt, and held that due process prevented a judge, who was directly involved in the occurrences leading to the citation for contempt, from presiding in the post-trial contempt proceedings. The concern in both cases was with due process protections for the contemnor, a separate offense from the trial in which the contempt arose. The Court in *Mayberry* indicated that a trial judge, by means of personal attacks by a defendant, could not be driven out of the ongoing case. 400 U.S. at 463, 91 S.Ct. at 504.

**6.** Petitioner argues that the test should be the appearance of prejudice, not actual prejudice. Petitioner's argument, as we read it, would require a judge to remove himself from a case every time a defendant attacks him. In fact,

the more vicious the attack the stronger the argument for recusal would be. We decline to adopt such a *per se* rule. Instead, we will examine the trial to ensure that the trial judge, despite good cause for adverse feelings toward a defendant, has conducted a fair trial. *Cf. United States v. Grinnell Corp.*, 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966), where the Court, applying the judicial recusal statute, 28 U.S.C. § 144, stated that for prejudice to be disqualifying it must "result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." *See also United States v. Trigg*, 392 F.2d 860 (7th Cir.), *cert. denied*, 391 U.S. 961, 88 S.Ct. 1863, 20 L.Ed.2d 874 (1968).

**7.** *State v. Waldman*, 57 Wis.2d 235, 203 N.W.2d 691 (1973); *Johnson v. State*, 53 Wis.2d 787, 193 N.W.2d 659 (1972) (both construing Wis.Stat. § 971.08 (1977)).

**8.** *United States v. Davis*, 516 F.2d 574 (7th Cir. 1975); *United States v. Gaskins*, 485 F.2d 1046 (D.C.Cir.1973).

L.Ed.2d 438 (1971); *Montes v. Jenkins*, 581 F.2d 609, 611 (7th Cir. 1978); 28 U.S.C. § 2254.[9] The policy embodied in this requirement is one of federal-state comity designed to give "the state an initial 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Wilwording v. Swenson*, 404 U.S. 249, 250, 92 S.Ct. 407, (1971) (per curiam) (quoting *Fay v. Noia*, 372 U.S. 391, 438, 83 S.Ct. 822, 848, 9 L.Ed.2d 837 (1963)). Hence, only when the federal constitutional claim has been "fairly presented" to the state courts is the exhaustion requirement satisfied as to that claim. *Picard v. Connor*, 404 U.S. at 275, 92 S.Ct. at 512. The fact that all of the facts upon which the petitioner relies were presented to the state courts is insufficient to establish exhaustion. *Macon v. Lash*, 458 F.2d 942, 948 (7th Cir. 1972). A difference in legal theory between that urged in state courts and in a petition for a writ of habeas corpus precludes exhaustion. *Picard v. Connor*, 404 U.S. at 275, 92 S.Ct. at 512. However, mere variations in the same claim rather than a different legal theory will not preclude exhaustion. *Macon v. Lash*, 458 F.2d at 948.

▆▆▆▆ Although we think it a close question, we find that petitioner failed to exhaust his constitutional claim by not raising it in the state appellate courts.[10] While the claim he presented to the trial court arises out of the same factual circumstance as the constitutional claim, it is a separate legal issue. A court's inquiry in addressing the abuse of discretion is focused on state law with analogies to federal procedure under Rule 11. The inquiry under a due process challenge is whether, as a matter of fundamental fairness, the state trial judge violated the petitioner's rights by not accepting his plea. We find these issues substantially different and we feel that federal-state comity requires that the state court first hear the substance of the constitutional claim.[11] Further, the constitutional challenge to the plea process was somewhat novel and thus the state courts should not be expected to foresee the constitutional claim and consider it based on the facts presented.[12] Under these circumstances, we do not feel the state courts had a fair opportunity to consider the substance of petitioner's legal claim and petitioner failed to exhaust this issue.

Accordingly, we affirm the district court's denial of the writ.

9. There is no indication that a state proceeding in which the unexhausted claim would effectively be considered is unavailable.

10. To avoid piecemeal consideration of petitions for habeas relief and out of consideration for federal-state comity, two circuits have held that a federal district court should not consider the merits of any exhausted claims if unexhausted claims exist in the case. *Galtieri v. Wainwright*, 582 F.2d 348 (5th Cir. 1978); *Gonzales v. Stone*, 546 F.2d 807 (9th Cir. 1976). However, both the Supreme Court and this court have considered the merits of exhausted issues while noting the existence of unexhausted claims. *Gooding v. Wilson*, 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972); *Brown v. Wisconsin Department of Public Welfare*, 457 F.2d 257 (7th Cir. 1972). Once a district court has considered the exhausted claims of a mixed petition on the merits, the policy reasons for dismissal of the entire case due to lack of partial exhaustion are undercut. In such a situation the investment of federal judicial resources in the case indicates that an appellate court should entertain the merits of the exhausted claims. *Galtieri*, 582 F.2d at 355–56 n.15.

11. *See Wilson v. Fogg*, 571 F.2d 91 (2d Cir. 1978), where the court stated: "Where a petitioner has raised his claim in the state court solely as a violation of a state statute and not on the basis of an invasion of his federal constitutional rights, dismissal by the federal court is mandated." *Id.* at 92.

12. *Compare Macon v. Lash*, 458 F.2d 492, in which we held that a *pro se* petitioner's allegations concerning trial counsel's inadequacies without referring to the constitutional basis for the arguments was a variation of a due process claim. There, the allegations of inadequacy of counsel involved a very common constitutional claim and the issue presented could really only be examined in constitutional terms. Under those circumstances, we concluded that the substance of the claim had been presented to the state courts.