**UNITED STATES of America ex rel. Nathaniel SPURLARK, Petitioner-Appellant-Cross-Appellant,**

v.

**Dennis WOLFF, et al., Respondents-Appellants-Cross-Appellees.**

**Nos. 81–2063, 81–2113.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 20, 1982.

Decided July 14, 1982.

Rehearing and Rehearing En Banc Granted and Opinion Vacated Sept. 8, 1982.

Neal B. Goodfriend, Chicago, Ill., for respondents-appellants-cross-appellees.

Sam Adam, Chicago, Ill., for petitioner-appellant-cross-appellant.

Before PELL and FAIRCHILD, Circuit Judges, and GORDON,* District Judge.

* Honorable Myron L. Gordon of the United States District Court for the Eastern District of Wisconsin is sitting by designation.

MYRON L. GORDON, District Judge.

This is a habeas corpus action in which both the petitioner and the respondents cross appeal from the judgment of the district court. The petitioner appeals from the district court's findings that the petitioner was not deprived of his sixth amendment right to counsel at trial and that the petitioner was not entitled to a hearing on his allegation of prejudice on the part of the trial judge. The respondents appeal from the finding of the district court that the petitioner's sixth amendment right to counsel was violated at sentencing.

I

The petitioner was arrested on August 12, 1972, and charged with possession of cocaine. After several continuances at his request, he was indicted on May 20, 1973, in the circuit court for Cook County, Illinois, for possession of cocaine. From June 6, 1973, to January 25, 1975, the trial of his case was continued 37 times, 21 times at the request of the petitioner. As will be noted in this opinion, many more adjournments of the trial date subsequently occurred. In addition, the petitioner twice moved for the substitution of judges; both motions were granted.

On January 23, 1975, the petitioner's case came before Judge Saul A. Epton, who set the matter for trial on February 26, 1975. The trial was subsequently rescheduled several more times to accommodate the petitioner's counsel, Mr. R. Eugene Pincham. Finally, on October 8, 1976, over a year and a half from the February trial date, Judge Epton admonished an associate of Mr. Pincham that the trial would begin on October 13, 1976, and counsel should be ready for trial. Trial did not begin on October 13; it was instead rescheduled several more times to accommodate Mr. Pincham. On November 5, 1976, when the case was called for trial, Mr. Pincham appeared before Judge Epton to inform the judge that he was engaged in another trial and could not proceed until the following week. Judge Epton directed Mr. Pincham to report directly to him when the other trial was completed so that the petitioner's trial could commence promptly.

The petitioner's case was called daily the following week, but the petitioner's counsel was unavailable. On Monday, November 15, an associate of Mr. Pincham appeared before Judge Epton and informed the judge that although Mr. Pincham had completed his other trial, he was unavailable to try the petitioner's case because he had instead commenced yet another trial in federal court. Judge Epton refused to grant another continuance and asked the associate to handle the defense. The associate refused to proceed, however, and left the courtroom.

The following day, two associates of Mr. Pincham presented a request for leave to file the appearance of a colleague of Mr. Pincham, Mr. Sam Adam, on behalf of the petitioner. Mr. Adam was not present, nor was he ready to proceed with the petitioner's case. Instead, he conditioned his appearance on the judge granting a thirty day continuance. Judge Epton refused Mr. Adam leave to appear and continued the case to the following day.

On November 17, two associates of Mr. Adam appeared; neither was ready to proceed with trial. Judge Epton then presented Mr. Spurlark with a choice:

"You can represent yourself in this case, or you can have a lawyer of your own choosing, or I am going to appoint Mr. Cornelius Toole to represent you." R. 118–119.

The petitioner replied that he chose as his attorney either Mr. Pincham or Mr. Adam. Judge Epton rejected these choices since neither attorney was available to proceed with the trial. Since the petitioner was unwilling to represent himself, the judge appointed Mr. Toole and set the case for trial on that Friday, November 19, 1976. On that day, Mr. Toole requested a continuance until the following Monday so that he could further review the file. The motion for a continuance was denied, but once the jury was selected, the proceedings were suspended for the day.

Prior to the start of trial on Monday, November 22, attorneys Pincham and Adam appeared before Judge Epton and filed a motion for substitution of judges. The motion alleged actual prejudice on the part of Judge Epton. He denied the motion, terming it a dilatory tactic and untimely. At the conference, the petitioner again asked to be represented by either Mr. Pincham or Mr. Adam. The request was denied, and the case proceeded to trial.

At trial, five Chicago police officers testified. Relying on an informant's tip, they had obtained a search warrant for an apartment. Four of the officers then went to the apartment building and observed the petitioner entering the building. When the officers gained entry to the apartment in question, they found the petitioner in a bedroom next to a table piled with drug paraphernalia and with what later proved to be cocaine having a street value of $250,-000. The jury found the petitioner guilty of possession of cocaine.

The petitioner appeared before Judge Epton for sentencing on December 13, 1976. At sentencing, Mr. Adam was present and sought leave to appear on behalf of the petitioner and to participate in the proceedings. Mr. Toole was also present. Judge Epton denied Mr. Adam leave to appear and sentenced the petitioner to imprisonment for a term of fifteen to thirty years. The petitioner's conviction was affirmed on appeal. *People v. Spurlark*, 67 Ill.App.3d 186, 23 Ill.Dec. 860, 384 N.E.2d 767 (1st Dist. 1978).

## II

The petitioner concedes that "this case has a sordid history of continuances and delays at the trial level." However, the petitioner contends that the fault did not lie with him, for on every occasion when the case was called, he was present. He argues that Judge Epton punished him because of irritation with the petitioner's counsel, even though the petitioner was not responsible for his attorneys' actions. The petitioner concludes that instead of forcing him to trial with an attorney he did not want, the judge should have permitted him additional time to hire another attorney.

■ The sixth amendment guarantees an accused the right "to have the assistance of counsel for his defense." The appointment of counsel to represent the accused is not a mere formality; the appointed counsel must be given an opportunity to prepare a defense. *Avery v. Alabama*, 308 U.S. 444, 446, 60 S.Ct. 321, 322, 84 L.Ed. 377 (1940); *see United States v. Miller*, 508 F.2d 444, 451–52 (7th Cir. 1974); *United States ex rel. Carey v. Rundle*, 409 F.2d 1210, 1215 (3d Cir. 1969), *cert. denied*, 397 U.S. 946, 90 S.Ct. 964, 25 L.Ed.2d 127 (1970). The court must also afford an accused a reasonable time for the selection of counsel. *Chandler v. Fretag*, 348 U.S. 3, 75 S.Ct. 1, 99 L.Ed. 4 (1954); *Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932).

■ We do not believe these general principles were offended in this action. The petitioner's case had been delayed for years, yet his chosen counsel was not ready to proceed to trial. The petitioner obtained over forty continuances; another twenty were granted by the court, usually because the petitioner's counsel failed to appear. The trial of the petitioner's case had been delayed over three years. The petitioner's sixth amendment rights are not unlimited. While he has an absolute right to counsel, he does not have an absolute right to counsel of his choice. *See, e.g., United States v. Gray*, 565 F.2d 881, 887 (5th Cir.), *cert. denied*, 435 U.S. 955, 98 S.Ct. 1587, 55 L.Ed.2d 807 (1978); *United States v. Tortora*, 464 F.2d 1202, 1210 (2nd Cir.), *cert. denied sub nom., Santoro v. United States*, 409 U.S. 1063, 93 S.Ct. 554, 34 L.Ed.2d 516 (1972). Judge Epton had a duty to bring this case to trial so as to vindicate the public's "strong interest in the prompt, effective, and efficient administration of justice." *United States v. Burton*, 584 F.2d 485, 489 (D.C. Cir. 1978), *cert. denied*, 439 U.S. 1069, 99 S.Ct. 837, 59 L.Ed.2d 34 (1979).

Even so, the petitioner argues that he was not given a meaningful opportunity to choose a new attorney because when he

chose Mr. Adam, the judge refused to allow Mr. Adam's appearance. At that point, the petitioner must have been aware of the judge's intent to proceed to trial without further delay. The judge had already denied Mr. Adam's conditional appearance—the condition being another delay of thirty days. Nevertheless, the petitioner insisted that he be represented by either Mr. Pincham or Mr. Adam.

■ The petitioner's right to be represented by the attorney of his choice cannot be insisted upon to such a degree that it obstructs the reasonable and orderly procedures of the court. *United States v. Poulack*, 556 F.2d 83, 86 (1st Cir.), *cert. denied*, 434 U.S. 986, 98 S.Ct. 613, 54 L.Ed.2d 480 (1977); *Maynard v. Meachum*, 545 F.2d 273, 278–79 (1st Cir. 1976); *United States v. Bragan*, 499 F.2d 1376, 1378–80 (4th Cir. 1974); *United States v. Hampton*, 457 F.2d 299, 301–02 (7th Cir.), *cert. denied*, 409 U.S. 856, 93 S.Ct. 136, 34 L.Ed.2d 101 (1972); *Carey, supra*, at 1214–15; *United States v. Cozzi*, 354 F.2d 637 (7th Cir. 1965), *cert. denied*, 383 U.S. 911, 86 S.Ct. 896, 15 L.Ed.2d 666 (1966). The sixth amendment does not give an accused the power to manipulate his choice of counsel to delay the orderly progress of his case. *United States ex rel. Martinez v. Thomas*, 526 F.2d 750, 754 n. 6 (2nd Cir. 1975).

■ Under the circumstances of this case, Judge Epton was entirely justified in rejecting a request of counsel that would have done nothing more than delay an oft-delayed matter. *See McKee v. Harris*, 649 F.2d 927 (2nd Cir. 1981); *United States v. Weninger*, 624 F.2d 163, 166–67 (10th Cir.), *cert. denied*, 449 U.S. 1012, 101 S.Ct. 568, 66 L.Ed.2d 470 (1980); *United States v. Silva*, 611 F.2d 78, 79 (5th Cir. 1980); *United States v. Inman*, 483 F.2d 738 (4th Cir. 1973). Instead, he appointed a competent attorney and granted that attorney a brief period to prepare for trial. We find no fault with Judge Epton's conduct. Judge Epton gave the petitioner a choice of how the trial would proceed in a manner consistent with the orderly administration of justice. That the petitioner did not like this choice does not make it constitutionally offensive. *McKee, supra*, at 931; *Wilks v. Israel*, 627 F.2d 32, 36 (7th Cir. 1980), *cert. denied*, 449 U.S. 1086, 101 S.Ct. 874, 66 L.Ed.2d 811 (1981). We find no problem of constitutional magnitude in the choice presented the petitioner; the petitioner's sixth amendment right to counsel was not infringed at his trial.

### III

The petitioner also argues that Judge Epton's failure to hold a hearing on the petitioner's motion for substitution of judges denied him his fourteenth amendment right to due process of law. The petitioner contends that his moving papers demonstrated the judge's actual prejudice toward him, primarily because of comments by the judge to the media regarding the delays in the case. The petitioner further contends that such a hearing is required under Illinois law. *See* Ill.Rev.Stat. ch. 38, § 114–5(c). Similarly, federal law contemplates that an allegation of prejudice against a judge must be heard by another judge. 28 U.S.C. § 144.

■ The possible prejudice of the judge is a matter that is collateral to the guilt or innocence of the accused. *See Chromiak v. Field*, 406 F.2d 502, 504 (9th Cir. 1969), *cert. denied*, 396 U.S. 1017, 90 S.Ct. 581, 24 L.Ed.2d 508 (1970). The petitioner must demonstrate that the judge's bias denied him a fair trial. *Wilks, supra*, 627 F.2d at 36–37; *Brinlee v. Crisp*, 608 F.2d 839, 852–53 (10th Cir. 1979), *cert. denied*, 444 U.S. 1047, 100 S.Ct. 737, 62 L.Ed.2d 733 (1980).

■ The petitioner did not meet this burden. Review of the trial record reveals that whatever Judge Epton's personal attitudes were toward the petitioner and his counsel, he took great pains to keep those matters from the jury. He also repeatedly ensured that the media attention to the trial had not tainted the jury. The petitioner does not indicate any part of the record that suggests anything to the contrary. We find no violation of the petitioner's due process

rights stemming from any alleged prejudice on the part of Judge Epton.

### IV

The district court granted Mr. Spurlark's petition insofar as it alleged a deprivation of his sixth amendment rights at sentencing. In an order dated June 5, 1981, the district judge granted the state a 120 day period to resentence the petitioner. *See* respondents' brief, App. C.

At his sentencing before Judge Epton, the petitioner was represented by Mr. Toole, his court-appointed counsel. Mr. Adam was also present, and Mr. Toole informed the judge that Mr. Adam wished to appear on behalf of the petitioner.

"MR. TOOLE: * * * *

"Your Honor, I have been advised by Mr. Spurlock [sic] that he has hired Mr. Adam for purposes of filing an appearance and proceeding as the attorney of record, *or as co-attorney.*

"Is that correct?

"THE DEFENDANT: Yes.

"MR. TOOLE: Mr. Adam is here, and it is my understanding that Mr. Adam wishes to file his appearance and participate in these proceedings.

"THE COURT: Motion denied. Motion denied. Mr. Adam, most respectfully a very fine lawyer associated with Mr. Pincham, at an earlier date requested to file an appearance on behalf of Mr. Spurlock. That motion was denied once. I don't know how many times I have to deny that motion. I will deny it again. Proceed." R. 485–86 (emphasis added).

As is evident from the above, Judge Epton stated no explanation for his summary denial of Mr. Adam's appearance. However, when this matter was before the district court, Judge Epton submitted an affidavit in which he stated that because of the earlier delays in the trial he believed that the appearance of Mr. Adam "was designed merely to further delay the proceedings." *See* respondents' brief, App. D.

The respondents argue that the history of the petitioner's case fully supported Judge Epton's belief and justified his refusal to permit Mr. Adam's appearance. They contend that the same principles which applied to the situation before the trial, as discussed in part II, *supra*, also apply at the sentencing.

We disagree. The right to the assistance of the attorney of one's choice should not be interfered with unnecessarily. While the right to be represented by an attorney of one's choice is not absolute, it is significant.

Preservation of this right has found expression in the courts. In *United States v. Laura*, 607 F.2d 52 (3rd Cir. 1979), the court of appeals for the third circuit held that the arbitrary dismissal of the defendant's local counsel was a violation of her sixth amendment right to representation of her choice, even though the defendant was represented by other competent counsel. Similarly, the court of appeals for the fourth circuit has held that it is a violation of due process for a court to interfere with the efforts of an accused to secure representation of his choice, thereby forcing him to be represented by an undesired court-appointed attorney. *Reickauer v. Cunningham*, 299 F.2d 170, 172 (4th Cir.), *cert. denied*, 371 U.S. 866, 83 S.Ct. 127, 9 L.Ed.2d 103 (1962).

This court has also recognized the right of an accused to be represented by counsel of his choice. In *United States v. Seale*, 461 F.2d 345 (7th Cir. 1972), the appellant was one of several defendants at trial. In the preliminary stages of the trial proceedings he was purportedly represented by counsel for some of the other defendants, but he then stated that he did not want their representation. He instead preferred to be represented by an attorney not present. Nevertheless, the trial judge continued to consider the other attorneys as his counsel. This court concluded:

"In sum, the right to counsel of choice could not be denied by exclusive recourse to appearances on record where Seale did not actually agree to the trial representation of the appearing attorneys or where he was not shown to be engaging in unwarranted dilatory tactics." *Id.* at 358.

The respondents argue that a showing of delay has been made here—that an appearance by Mr. Adam would have delayed the proceedings. However, there is no support for that position in the record. It is undeniable that Judge Epton had experienced massive difficulty bringing the petitioner's case to trial, but that battle was over at the time of sentencing. Judge Epton made no inquiry into the matter of delay at the time of sentencing. He was not confronted with any motions or requests for a continuance. In contrast to his earlier effort to appear, Mr. Adam did not condition his appearance at sentencing with a request for an adjournment. So far as the record discloses, the state court's interest in the orderly administration of justice could have been fully preserved without denying Mr. Adam's appearance.

The respondents note that Mr. Toole had already moved for a new trial, and the state was prepared to argue the motion. The respondents argue that permitting Mr. Adam's appearance would have interfered with the prompt resolution of that motion. This, also, is not supported by the record. Mr. Toole expressly left open the option of having Mr. Adam appear as "co-attorney" with him. Thus Judge Epton could have conditioned Mr. Adam's appearance with the requirement that Mr. Toole also continue to represent the petitioner and argue the motion for a new trial.

■ In *Seale*, this court stated: "The heart of the matter is the scope of discretion of the trial court when an objection to counsel is made known." *Id.* at 359, *quoting Brown v. United States*, 105 U.S.App. D.C. 77, 264 F.2d 363, 368 (D.C.Cir.) (*en banc*), *cert. denied*, 360 U.S. 911, 79 S.Ct. 1299, 3 L.Ed.2d 1262 (1958). While the circumstances of this case amply justified the appointment of Mr. Toole to handle the trial, they did not justify the further denial of the petitioner's right to counsel of his choice at a separate, later proceeding. We agree with the district court that Judge Epton exceeded the scope of his discretion by refusing to permit Mr. Adam's appearance at the time of sentencing. That refusal was an arbitrary and unwarranted denial of the petitioner's sixth amendment right to counsel of his choice. Thus, the writ of habeas corpus was correctly granted; the 120 day period to allow resentencing which was granted by the district court shall commence from the date of this court's mandate.

■ In his separate opinion, Judge Pell has commented on the exhaustion rule. However, the exhaustion requirement of § 2254(b) "refers only to remedies still available at the time of the federal petition." *Engle v. Isaac*, —— U.S. ——, —— n. 28, 102 S.Ct. 1558, 1570, n. 28, 71 L.Ed.2d 783 (1982). *Spurlark* is an Illinois case, and this court takes the position that in Illinois there is no post-conviction remedy for a ground which could have been raised on direct appeal, but was not. *See United States ex rel. Williams v. Brantley*, 502 F.2d 1383, 1385 (7th Cir. 1974). Recent cases indicate that *Williams* is still good law. *See, e.g., United States ex rel. Clauser v. Shadid*, 677 F.2d 591 (7th Cir., 1982). Because there was no post-conviction remedy available to Mr. Spurlark at the time his federal petition was filed, there is no exhaustion problem.

For the foregoing reasons, the orders of the district court granting the petition in part and denying it in part are AFFIRMED.

PELL, Circuit Judge, concurring and dissenting.

I concur in the court's opinion as to Parts, I, II, and III but for reasons hereinafter set out respectfully dissent as to Part IV.

I.

In my initial examination of this appeal I had a question as to whether or not in the light of *Rose v. Lundy*, —— U.S. ——, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), the case should have been dismissed in the district court because of exhaustion of state remedies. The particular issue on which the majority opinion affirms the district court was not presented to the Illinois Appellate

Court. *People v. Spurlark*, 67 Ill.App.3d 186, 23 Ill.Dec. 860, 872, 384 N.E.2d 767, 779 (1978). It seems clear, however, under the law of this circuit, as is pointed out in the majority opinion, that Spurlark would be deemed to have waived the claim in question and therefore he could not proceed under Illinois post-conviction procedures.

Although I am bound by the law of the circuit on this matter, I do note that because of the current emphasis on the importance of comity, as exemplified in *Rose*, we are requiring the district courts in this "waiver" situation to consider issues which the state court had no opportunity to consider. The importance of comity is demonstrated in this case by the fact that the Illinois Appellate Court extensively in a thirteen page opinion gave careful consideration to all of the claims listed by Spurlark. At this belated date, to upset some of the judicial proceedings of the State of Illinois on matters concerning which that state's court had no opportunity to pass, seems to me to violate flagrantly the rationale of comity underlying the Court's decision in *Rose*.

## II.

Assuming that the sentencing matter was properly before the district court, I cannot agree that it justifies affirmance by this court. As the district court found in its Memorandum and Order, Cornelius Toole was an experienced trial lawyer and, obviously, from the district court's opinion, competently tried the case on behalf of Spurlark, particularly when it is considered that he had a short time for preparation notwithstanding the fact that the case was not a complicated one and the proof of guilt was overwhelming.

The petitioner's request for Sam Adam as retained counsel was made in a belated manner without any indication of necessity for such a request. In view of the continual abuse of the judicial process by those previously representing the petitioner and the petitioner's refusal to retain an attorney who was ready to proceed to trial, it was reasonable for the trial court to believe the petitioner was only seeking to delay further the proceedings. The court, in implementing the "public need for the efficient and effective administration of criminal justice," *United States ex rel. Carey v. Rundle*, 409 F.2d 1210, 1214 (3rd Cir. 1969), cert. denied, 397 U.S. 946, 90 S.Ct. 964, 25 L.Ed.2d 127 (1970), was justified in denying this dilatory motion so that the proceedings could finally be concluded. The record reflects that Toole did not ask to withdraw as counsel and was ready to proceed with the post-trial motions. The record further demonstrates that Toole had diligently prepared a detailed motion for new trial. The state's attorney had received a copy of the motion and was ready to resist the arguments contained therein. Considering the procedural context of the petitioner's last-minute request for additional or substitute counsel, the state trial court properly exercised its discretion in denying the motion.

It is also significant that while some preference was expressed for Adam alone, it was further acceptable that Adam be only a co-attorney in the sentencing matter. I find it incredible to believe that if this had been permitted there would not have been a diligent effort for a further delay in the sentencing procedure. It is obvious from this entire record that the petitioner had one main objective and that was to postpone the evil day of possible incarceration.

Because it was acceptable that Toole continue in the case on sentencing, the lack of a chosen co-attorney under the circumstances of this case, I do not believe, rises to a constitutional violation. The district court in originally denying summary judgment as to the sentencing matter stated that if the petitioner was denied representation of his choice in the sentencing matter, he need not show prejudice. Even if we assume this to be a correct statement of law, it appears to me that total lack of any showing in the record that Spurlark was prejudiced in any way would call for a denial of the writ on this issue because, even if this was a constitutional error, it was harmless beyond a reasonable doubt. What the majority opinion seems to be doing is honoring a consti-

tutional right in a vacuum, an approach scarcely according a due measure of respect to the purposes and principles of comity.